## Cynthiana Telephone Company v. Asbury.

(Decided March 1, 1912.)

### Appeal from Harrison Circuit Court.

1. Telephone—Personal Injuries from Falling Wire.—While driving at night on a turnpike appellee's wagon bed was caught by a fallen telephone wire which threw it to the ground and upon him, thereby causing him great bodily injury. Held, 1st. The law imposed upon appellant the duty to exercise ordinary care in keeping its poles, wires and appurtenances in such a condition as would render their presence upon and along the turnpike reasonably safe to persons traveling thereon; and there being evidence that its negligence in permitting its poles and wires to be and remain in a defective and unsafe condition, caused the falling of the wire across the turnpike whereby appellee was injured; and there being no evidence that appellee was guilty of contributory negligence, the trial court properly refused the peremptory instruction asked by appellant at the conclusion of the evidence.

2. Verdict Not Excessive.—The verdict of $1,250.00 is not excessive, it appearing from the evidence that appellee's injuries consisted of a broken rib, bruised hip and badly sprained back, and that the character of these injuries together with his age make it probable that he will never be restored to his usual health or strength.

J. J. OSBORNE for appellant.

M. C. SWINFORD for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellee recovered a verdict and judgment against appellant in the court below for $1,250.00, as compensatory damages for personal injuries resulting from his coming into contact with, and being thrown from a wagon by, a loose wire belonging to appellant's telephone system, which, it was alleged, it had negligently permitted to become detached from one or more of its poles and so suspended upon and across the highway as to obstruct its use and make travel thereon dangerous.

It appears from the record that the accident occurred on the Cynthiana and Leesburg turnpike in Harrison county, under the following circumstances: Appellee was a tenant upon the farm of Charles McDaniel and on the afternoon of April 25th, 1911, hauled a load of wood from McDaniel's farm to Leesburg, using the latter's wagon and pair of mules for that purpose. In

returning in the empty wagon from Leesburg to Mc-Daniel's farm, appellee arrived at the place of the accident about dark and while driving along in the middle of the turnpike came in contact with the sagged, or fallen telephone wire, which, after passing over the backs of the mules and momentarily catching upon some part of the harness, caught against the front of the empty wagon bed in which appellee was riding and threw it with great force from the wagon on the ground, at the same time breaking the coupling of the wagon and causing the front wheels to separate from those in the rear. The latter, with the wagon bed, remained at the place of the accident, but the mules went on their way with the front wheels and stopped at a residence on the turnpike.

Appellee was violently thrown to the ground with the wagon bed, caught thereunder and greatly injured; one of his ribs being broken, a hip bruised and his back badly sprained. By the injuries thus sustained he was caused great suffering, both physical and mental, and wholly incapacitated for any sort of labor for at least a month, though not all the time confined to his bed or home. Moreover, Dr. Barclay, the attending physician, testified that the most serious injury sustained by appellee was the spraining of his back, and that it would likely require a year's time to determine whether the injuries sustained by him are of a permanent character. This would seem a reasonable view to take of appellee's condition, as he is somewhat more than sixty years of age. The negligence complained of in the petition was the alleged failure of appellant to maintain its poles, cross arms and wires, along and upon the Cynthiana and Leesburg turnpike, in a reasonably safe condition; it being in substance averred that it negligently suffered and permitted its poles and cross arms, and the wires thereon, to get out of repair and become so unsafe and dangerous as to cause the wire by which appellee was injured to sag and fall upon and across the turnpike, thereby obstructing same and endangering the safety and lives of persons traveling thereon; that this condition of its poles, cross arms and wires, as well as the falling of the wire in question, was known, or by the exercise of ordinary care, could have been known to appellant when and before appellee was injured, but was unknown, and could not by such care have been known to appellee.

The answer contained a traverse, a plea of contributory negligence on the part of the appellee, and that the falling of the wire by which he was injured, was caused by a violent windstorm that occurred three or four days before the accident, and the want of opportunity on appellant's part between the occurrence of the storm and the accident to appellee to repair its poles and lines at the place of the accident. All affirmative matter of the answer was controverted by reply.

Although other grounds were also urged in support of its motion for a new trial, appellant asks a reversal of the judgment on but two grounds: First, that the trial court erred in refusing its request, made at the conclusion of the evidence, for a peremptory instruction directing a finding in its behalf by the jury. Second, that the amount of the verdict was excessive.

The motion for the peremptory instruction was based on the grounds: (1) That the evidence failed to show that the appellant knew, or by the exercise of ordinary care could have known, of the falling of the wire by which appellee was injured. (2) That it did show that in the matter of receiving his injuries, appellee was himself guilty of negligence but for which he would not have been injured. Neither of these contentions is sustained by the record. As to the first, it is sufficient to say that the negligence charged against appellant was not that its servants had, before appellee was injured, seen the fallen wire or been told of its condition, or that they failed to repair the wire before appellee arrived at the place of the accident, which if done would have prevented his injuries, but that its negligence consisted in its suffering and permitting its poles, cross arms and wires, at and near the place of the accident, prior to and at the time of its occurrence, to become and remain so decayed, defective and out of repair as to render them dangerous to persons traveling the turnpike, because liable at any and all times to fall upon them or obstruct the highway.

The negligence of appellant and its servants in thus permitting its poles, wires and appurtenances to be and remain in the defective and dangerous condition referred to, was fully shown by the evidence, as was the fact, that such defective and dangerous condition of the poles, wires and appurtenances, caused the wire by which the appellee was injured to become unfastened from the

poles fall upon and across the turnpiks and inflict the injuries sustained by him. The evidence was conclusive that the pole from which the wire in question became separated, had long leaned too far from its base and over the pike, and that the cross arm to which the wire had been attached was, and had long been, loose and badly decayed. It also appeared from the evidence that at the time of the accident many other poles and cross arms, as well as the wires of appellant's telephone line on the Leesburg pike, were badly out of repair. The negligence of appellant in the particulars charged being fully established, the law imputed to it knowledge of the falling of the wire and its presence upon, or across, the turnpike at the time appellee was injured, because these consequences were such as would probably and reasonably be expected to result from the negligence shown.

The law imposed upon appellant the duty to exercise ordinary care to keep its poles, wires and appurtenances in such a condition as would render their presence upon and along the turnpike reasonably safe for persons traveling thereon; and if appellee's injuries were caused by its failure to use such care, it was guilty of negligence and such negligence must be regarded as the proximate cause of his injuries.

The degree of care required of appellant in maintaining its poles and lines is thus stated in an excerpt from Section 165 of Jones on Telegraph and Telephone Companies:

"Should the location once have been properly selected and for any reason has since been neglected or destroyed, another must be made; and should the material out of which the lines are constructed become old, decayed or cumbersome, it should be removed and the best and most up-to-date structures erected and used in lieu of them. To be more explicit, the streets and highways should be substantially as safe after they are occupied by these companies as they were before these lines were constructed thereon. Telegraph and telephone business being a legitimate one, though involving peril to others, its prosecution with the care that a man of (ordinary) prudence would exercise in view of its character, would not entail liability for injuries which may result, notwithstanding the exercise of such due

care; but the amount of care must be proportioned to the amount of danger and the liability of accident.''

Again in Section 187 of the same work the author in part says:

''Not only should the poles be sufficiently strong—and speaking on this subject, the same rule is applied to the cross arms—at the time they are erected to hold up the wires and endure and withstand anticipated, and reasonable climatic changes, but they must also be durable, or made to be such, since, as is well known, the life of these poles is short, if these companies were permitted to allow their poles to become weakened by decay, or, in other words, if they were not duty bound to maintain their lines, they would avoid any responsibilities.''

The standard of care above announced has also been adopted in this jurisdiction. West Ky. Telephone Co. v. Pharis, 25 R., 1838.

The evidence failed to show that the bad condition of appellant's lines on the Leesburg turnpike was caused by a violent windstorm occurring shortly before appellee was injured. There was evidence conducing to show that other lines of appellant were injured by such winds, but they were not of such violence on the Leesburg lines. Besides, such winds as there were, occurred a week or more before appellee was injured, and it was shown by the evidence that, notwithstanding the ample time and opportunities therefor, no inspection was made of, or repairs upon, the Leesburg lines by appellant's servants between the occurrence of the high winds and the time of appellee's injuries; indeed, it seems apparent from the evidence that no inspection of these lines had been made within forty-five days next before that upon which appellee was injured, and such inspection as had previously been made was obviously imperfect, as the poles, cross arms and wires remained in bad condition.

We are unable to find in the record any evidence of contributory negligence on the part of appellees. The fact that he saw, in going to Leesburg, that the wire by which he was later injured had become disconnected from the insulator on the cross arm of one of the poles, gave him no notice that the wire would fall from the pole and obstruct the turnpike before his return from Leesburg. When thus seen by appellee the wire was

not wholly separated from the cross arm, nor had it fallen or become an obstruction to travel on the turnpike, although, according to the testimony of others, its condition as then observed by appellee was as it had been for several days. Had the condition of the wire at that time been such as to indicate to appellee that it would probably fall before his return, that fact would not of itself be sufficient to show that his failure, upon returning from Leesburg, to stop and look to see whether it had fallen in his absence, was negligence.

In West Ky. Tel. Co. v. Pharis, supra, we held that where one, previous to her being injured by it, saw an obstruction in a public street made by the falling of a telephone line, her knowledge of the presence of the obstruction was not of itself sufficient to show contributory negligence, though it was a fact competent to be considered by the jury in determining whether she was or not guilty of such negligence. City of Carlisle v. Secrest, 25 R., 336; City of Mayfield v. Guilfoyle, 23 R., 43. But as before said there was nothing whatever in the appearance of the wire as observed by appellee on his way to Leesburg that required him, in returning, to make an inspection of it for the purpose of ascertaining whether it had fallen across the turnpike in his absence.

It is appellant's contention that appellee upon discovering that the wire was about to come in contact with the wagon bed, instead of stopping the mules and thereby preventing the accident which followed, forced them forward and in that way caused his injuries. This contention is wholly disproved by the testimony of appellee, who said that he discovered the presence of the wire from its momentarily catching upon the harness of the mules, and that before he fully ascertained what the obstruction was, or could take any steps to stop the mules, the wire had passed over their backs, come in contact with the wagon bed and thrown it to the ground.

The accident was witnessed by no other person, and as it occurred about dark and the circumstances connected with the accident were such as would have been expected to occur in such a situation, appellee's version of the matter seems to us to be entirely reasonable and consistent with the truth.

It is true appellant introduced two witnesses, one of them an employee in its service, who testified that a day or two after the accident appellee admitted to them that

the wire first caught on the lines and stopped the mules; but that he forced them forward, and by that means caused the wire to come in contact with the bed and throw it from the wagon. Appellee denied the making of these statements. In any event the testimony of the two witnesses referred to was not substantive evidence, but was competent for the purpose of contradicting appellee and thereby discrediting him.

The instructions given by the court submitted to the jury the question of whether appellee was guilty of contributory negligence in the matter of receiving his injuries, as well as that of appellant's negligence; and we are of opinion from all the evidence that there was no error in the finding made by them that his injuries were caused by appellant's negligence. In no view of the case would the peremptory instruction asked by appellant have been proper.

We can not sustain appellant's final contention that the amount of the verdict was excessive; while liberal, in view of what is previously stated in the opinion as to the character of his injuries, his suffering therefrom, his age and the probability of his being permanently affected thereby, and his capacity to earn money lessened, we are not disposed to set aside the verdict.

Therefore the judgment is affirmed.