## Wells & Cherry v. Cumberland Telephone & Telegraph Company and L. T. Hammond.

(Decided December 7, 1917.)

### Appeal from Nelson Circuit Court.

1. Telegraphs and Telephones—Care Required to Keep Poles and Wires in Condition.—The law imposes upon a telephone company the duty of exercising ordinary care to keep its poles, wires and appurtenances in such a condition as will make their presence along a public highway reasonably safe for persons traveling thereon.

2. Negligence—Pleading.—When specific acts of negligence are charged, a recovery will not be permitted for other acts of negligence not charged.

3. New Trial—Instructions.—Where the instructions to the jury are so contradictory as to nullify each other a new trial will be granted.

E. N. FULTON, JOHN A. FULTON and FRANK E. DAUGHERTY for appellants.

NAT W. HALSTEAD, W. C. McCHORD and HUMPHREY, MID-DLETON & HUMPHREY for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellee the Cumberland Telephone & Telegraph Company operates a telephone line between Bardstown and Bloomfield, in Nelson county, a distance of twelve miles.

In the afternoon of December 8th, 1915, the appellants Wells and Cherry, the plaintiffs below, drove from Bardstown to Bloomfield in a buggy. While on their return trip to Bardstown and at about half past ten o'clock that night, the mare they were driving ran into a sagging wire of the defendant company's telephone line, the wire catching the mare under the neck. Wells was thrown from the buggy, and Cherry while trying to get

out of the buggy was caught between the wheel and the bed of the buggy. Fortunately, however, no bones were broken, and neither party seemed to be seriously hurt.

Wells and Cherry brought separate actions against the company for damages, joining the company's foreman, Hammond, as a defendant. By agreement the two cases were tried together before the same jury which returned a verdict for the defendant in each case, and Wells and Cherry appealed.

A short time before the accident the company had begun to overhaul and increase the capacity of its plant, and had put L. T. Hammond in charge of its work, with a crew of men. The work consisted of straightening poles, pulling corners back, replacing broken insulators with new ones, and repairing the poles and wires wherever it was necessary. In addition to this repair of the old plant the crew put in one complete new circuit consisting of two wires for the purpose of increasing the capacity.

The work was begun at the Bloomfield end of the line and had proceeded to a point just beyond where the accident occurred. The new wires were strung on the same poles and cross arms that carried the old wires. The accident occurred in front of the Briggs place; and going from Bloomfield towards Bardstown there is a bridge to be crossed just before reaching the Briggs place. The telephone line parallels the road on the Briggs side, passes over the bridge, and then crosses the road at right angles. It then runs along the opposite side of the road for perhaps seventy-five yards, and it then again crosses the road at right angles and continues towards Bardstown on the Briggs side of the road. The accident occurred at this second crossing of the road by the wires.

An automobile party consisting of Lander and others left Bardstown for Bloomfield at about ten o'clock the same night, and at the place where the accident subsequently befell Cherry and Wells the Lander party encountered two sagging wires. The first wire hung very low and struck the automobile just below its lamps; the second was higher and grazed the top of the automobile. Neither Hammond nor any other employee of the company knew of the sagging wire until the next morning when Hammond and his crew left Bloomfield to continue their work. They first encountered the high sagging wire near the bridge, but it was not sagging enough to interfere with their wagon. They spliced the wire, took up the slack, and proceeding down the road they soon

encountered the other wire which had caused the accident to the plaintiffs. They then learned for the first time that one of the old wires in use had broken between the two crossing points, and that the wire had "crept" over on the insulators either way so as to cause the sagging at the two crossing places.

It is the theory of the plaintiffs that the new wire which crossed the road twice near the Briggs place was put up by Hammond and so insecurely fastened as to permit it to sag down over the road and thus cause the injury. It is the theory of the company, however, that the new wire had nothing to do with the accident, but that the wire that sagged was one of the older circuits already in use. The proof not only fails to show that the new wire was down but it shows without contradiction that it was an old wire that sagged; that during the night of December 6th, between dark and eleven o'clock one of the older wires in use broke between the two crossing points; and that after the wire broke it "crept" both ways, causing the wire to sag at both points where it crossed the road, as above narrated.

There was no proof of negligence, or defective construction or of a bad condition, or a need of repair, or that the company had notice of the sagging wire.

Appellants ask a reversal upon the ground that the trial court erred, (1) in refusing to give instruction "A" asked by the plaintiffs, and (2) in giving instruction No. 7. The petition charges the company's foreman and servants with gross negligence in so changing, removing, and insecurely fastening the wires that they sagged and fell down upon the highway; and that the plaintiffs' injury was caused by the gross negligence of the company and its servants, particularly Hammond, the foreman, "as hereinbefore set out."

The case was tried upon two distinct theories; the plaintiff's theory being that the new wire sagged, because it was negligently fastened; the defendant's theory being that the old wire broke and was the wire that sagged.

The plaintiffs would make the company liable for failing to properly fasten and secure the wire, while the company claims exemption from liability upon the ground that there was no proof of the negligence alleged, and further because the uncontradicted evidence shows that the break in one of the older wires was not caused by the company's negligence.

The first instruction put upon the company the duty of exercising ordinary care in the construction and maintenance of its wires, and made the company liable in case it failed to exercise that care. The second instruction gave the measure of damages; the third provided for separate verdicts in case both defendants were not exonerated; and the fourth defined ordinary care.

The fifth, sixth and seventh instructions read as follows:

"5. The court instructs the jury that while it was the duty of the defendant to exercise reasonable care to construct and maintain its telephone wires along and over the highway so as to avoid injury to travelers along said highway, yet, defendant was not an insurer of the safety of such travelers from injury by coming in contact with such wires; and if the jury believes from the evidence that the wire which caused the injury complained of was in a reasonably safe condition prior to the night of the accident, and if there was any defect in the wire which caused it to break, and the same was not known to the defendant or its servants or agents, and could not have been known by the exercise of reasonable diligence, and that the injury to plaintiffs was caused by a condition of sagging of the wire so as to obstruct the highway, and which fact the defendant or its servants or agents did not know of, or could not have discovered by the exercise of reasonable diligence in time to remove the obstructing wire from the highway from the time of the sagging of the wire that caused the injury until the injury occurred, the jury should find for the defendant."

"6. The court instructs the jury that if they believe from the evidence that the telephone line which sagged and caused the injury to plaintiffs, as complained of, was constructed in the usual and customary manner, and was in a reasonably safe condition, so far as could have been discovered by the exercise of reasonable diligence before it sagged, and that the defendant did not know, or could not have known by the exercise of reasonable diligence, of the breaking and sagging of the wire after it did sag in time to have repaired it before plaintiffs were injured, they will find for the defendant."

"7. The court instructs the jury that it is not claimed by plaintiffs there was any defect in the wire which broke or sagged causing the injury; therefore, it is admitted that the injuries to plaintiffs were not caused by any defect in said wire. And if the jury believe from the evidence that said wire broke and sagged and caused the

injury complained of and further believe from the evidence that defendant L. T. Hammond and the other servants of defendant engaged with him in adjusting the wires complained of in the petition did so in a reasonably prudent and careful manner, and they were not guilty of any neglect in adjusting said wires at the time complained of, the jury should find for defendant."

The eighth instruction authorized nine or more jurors to make a verdict.

The law imposes upon a telephone company the duty of exercising ordinary care to keep its poles, wires and appurtenances in such a condition as will make their presence along a public highway reasonably safe for persons traveling thereon. West Kentucky Telephone Co. v. Pharis, 25 Ky. L. R. 1838, 78 S. W. 917; Cynthiana Telephone Co. v. Asbury, 147 Ky. 307; Raines v. East Tennessee Telephone Co., 152 Ky. 205.

But, as above stated, there was no evidence that the company knew or was notified of the break during the night; on the contrary, the first notice any employee of the company had was obtained by the crew on the following morning as it went to work. The break occurred after dark; the accident happened before midnight; and the break was repaired early the next morning.

The first instruction followed the language of the petition under the familiar rule that when specific acts of negligence are charged a recovery will not be permitted for others not charged. Gaines & Co. v. Johnson, 133 Ky. 507; City of Oakdale v. Sanders Extrx., 155 Ky. 352. It appears therefore that the issue made by the pleadings was submitted to the jury, and that the plaintiffs' rights were not prejudiced by the court's refusing to give instruction "A," which was not only unnecessary but objectionable.

It is insisted that the seventh instruction is erroneous (1) because it contradicts the fifth and sixth instructions; (2) because it unwarrantedly assumed that the petition admitted there was no defect in the broken wire; and (3) because it stressed and gave undue prominence to the fact gratuitously assumed to have been admitted by the petition. We are of opinion that this criticism is well founded. The fifth instruction told the jury that if there was a defect in the wire which caused it to break and the defect was not known to the defendant and could not have been found by the exercise of reasonable diligence they should find for the defendant, and the sixth instruction further advised the jury that if they should

believe from the evidence that the sagging wire was constructed in the usual and customary manner and was in a reasonably safe condition so far as could have been discovered by the exercise of reasonable diligence, the law was for the defendant.

These two instructions submitted to the jury the issue as to the defect in the wire that broke, and in this respect they were more favorable than the petition warranted, since it did not rely upon a defective wire as an act of negligence upon the part of the company. But, when the seventh instruction stated that it was not claimed by the plaintiffs that there was any defect in the wire which broke and sagged, and that it was admitted the plaintiffs' injuries were not caused by any defect in the wire, it not only took from the jury the issue of the defect in the broken wire submitted by the former instructions, but it treated that issue as confessed by the plaintiffs. In this respect the seventh instruction was clearly erroneous both as to the matter it contained and the manner of its statement. In other words, while the fifth and sixth instructions given upon the motion of the defendant, submitted to the jury the question of the defective construction and condition of the wire that broke, the seventh instruction, likewise given upon the motion of the defendant, told the jury that the plaintiffs admitted the injuries were not caused by any defect in the wire. In this way the seventh instruction more than nullified the fifth and sixth instructions, since it was, in effect, a peremptory instruction to find for the defendant upon the issue submitted.

Under these instructions counsel for defendant could legitimately argue that the company was only liable in case the defendants were injured by a defective wire, but that the court had said in so many words that the plaintiffs admitted their injuries were not so caused. The instructions were not only contradictory but they put the plaintiffs out of court.

It has been suggested that because no issue as to a defective wire was made by the pleadings, the court should not have instructed upon that question, and that since the effect of the fifth, sixth and seventh instructions was to peremptorily instruct for the defendant upon the issue of a defective wire, they were properly given, or at least they were not prejudicial.

We cannot concur in this view. If the defendant was entitled to a peremptory instruction upon the ground

that the proof failed to sustain the cause of action set forth in the petition, it should have been given. But when the court undertook to submit the issues to the jury it was its duty to properly instruct the jury, and not to leave to it the duty of harmonizing conflicting instructions or of determining which instruction they should follow.

Judgments reversed and actions remanded for new trials.