Paul **GIVAN and Doris Givan, Appellants,**

v.

**ALDEMEYER/STEGMAN/KAISER, INC. (ASK REALTY), Appellee.**

No. 87–CA–2716–MR.

Court of Appeals of Kentucky.

April 20, 1990.

Paul L. Whalen, Fort Thomas, for appellants.

Robert F. Duncan, Clark Ward & Hopgood, Lexington, H. Douglas Rouse, Florence, for appellee.

Before GUDGEL, HAYES and REYNOLDS, JJ.

HAYES, Judge:

Paul and Doris Givan appeal from an order entered November 20, 1987, in Kenton Circuit Court granting summary judgment to appellee and dismissing the Givans' claims.

In July, 1985, the Givans entered into an exclusive listing contract with Jim Huff Realty for the sale of their home in Elsmere, Kentucky. Subsequently Jim Tingle, an agent employed by appellee, Aldemeyer/Stegman/Kaiser, Inc. (ASK Realty) contacted Jim Huff Realty to set up an appointment to show the home to his clients, Scott and Michelle Rains. On November 18, 1985, the property was shown to the Rains and an offer was made. Jim Tingle acted as their purchasing agent. The Givans counter-offered and a lease/purchase agreement was executed. It was provided therein that the Rains would rent the home for approximately six months and would complete the purchase by an assumption of the existing mortgage of $27,000 on or before June 1, 1986. Paragraph one of the agreement provided that the purchase price was $45,000, and that the agreement was subject to the purchaser obtaining a loan of approximately $27,-000 at a rate of 7.5% or less.

The Rains occupied the premises and made timely monthly rental payments. However, they were unable to complete the purchase of the home due to the failure of Scott Rains' father to provide the down payment as he had orally promised. The Rains held over and were subsequently evicted from the property. In addition, various repairs had to made before the property was eventually sold in October, 1986. The Givans then brought this action against Rains, Jim Huff Realty, Inc. and ASK Realty, alleging that both Realty companies had breached their fiduciary duties in failing to ascertain the Rains' ability to finance the purchase of the home. A motion for summary judgment was made by ASK Realty on grounds that there was no duty owed to the Givans by that company as agent of the purchasers. The trial court agreed, and granted the motion. This appeal followed.

On appeal, the Givans argue that there was an affirmative duty on the part of ASK Realty to ascertain the Rains' financial ability to purchase the real estate. This is true, they argue, in spite of the fact that they had no contract with ASK.

ASK Realty agrees that the fiduciary relationship created by a broker and client requires that all material information known to the broker be disclosed to the principal, including the financial status of the buyer. It is also undisputed that when a broker knows of the insolvency of a prospective purchaser, or makes representations about his financial status, in ignorance of the facts, the broker is held responsible when the principal detrimentally relies upon such information. *Croxtons Executors v. Henry & Fleenor*, 193 Ky. 318, 235 S.W. 753 (1921). However, ASK maintains that these principles only apply to the broker who has expressly contracted with the seller. We disagree.

When a broker acts as an intermediary between a seller and a prospective buyer, a broker is under a duty to deal fairly and honestly with both parties, even in the absence of a principal/agent relationship with them. 12 C.J.S., *Brokers* § 107, at 307 (1980). *Hughey v. Rainwater Partners*, 661 S.W.2d 690 (Tenn.App.1983). The broker acting as a subagent with the express permission of another broker who has the listing of the property to be sold is under the same duty as the seller's broker to act in good faith. 12 Am.Jur.2d, *Brokers*, § 84, at 838 (1964). A broker may be liable for misrepresentation as to the financial standing of his principal. *Id.* at § 108.

Appellant refers to Section 7.11 of the *National Association of Realtors, Handbook on Multiple Listing Policy*, 4th Ed. (1985), which establishes the relationship

between the listing broker and cooperating broker:

> In the Multiple Listing Service of a Board of REALTORS, the cooperating broker in a cooperative real estate transaction is the subagent of the listing broker and not the agent of the buyer, unless there is an agreement to the contrary between the cooperating broker and the buyer which is fully disclosed to all parties to the contract and to all brokers involved.

In addition, the National Association of Realtors Code of Ethics contains 24 Articles outlining the duties of realtors in general terms. Article 7 requires that the realtor treat fairly all parties to the transaction. As a subagent, he is required to promptly inform the listing broker of all pertinent information regarding either the property or the prospective purchasers. *Professionalism in Real Estate Practice* (2nd Ed. 1988). Article 9 requires that he avoid exaggeration, misrepresentation, or concealment of pertinent facts. He must not induce purchasers to enter into contracts beyond their capacity to fulfill. *Professionalism, supra.* Further, the realtor has an affirmative duty to discover adverse factors that a reasonably competent and diligent investigation would disclose. Article 11 requires that the realtor refer to the Standards of Practice of the National Association. Finally, Article 20 requires that he see that all financial obligations and commitments regarding any real estate transactions are in writing, expressing the exact agreement of the parties. It does not appear that the oral promise of Scott Rains' father was ever secured by a written note of any kind.

In *Hughey v. Rainwater Partners, supra,* the Hugheys had listed their property for sale with Bill Jones Realtor. Subsequently, a prospective purchaser contacted Rainwater Partners, who prepared a written offer. The two realty companies then agreed to co-broke the property for purposes of splitting the commission. The Hugheys and the buyers agreed on a price. However, on the date the sales contract was entered into Rainwater Partners was informed by the purchasers that their personal check for the down payment was not covered by adequate funds in their bank. The buyer assured Rainwater Partners, however, that there would be adequate funds for the closing. Rainwater Partners failed to advise the sellers, the Hugheys, of the worthless check. Relying on their contract, the Hugheys conditionally contracted to purchase another home. The purchasers failed to appear at closing. Some time later, Rainwater Partners told the Hugheys that the check attached to the offer was worthless.

The Hugheys brought action against Rainwater Partners for failure to disclose facts concerning the purchasers' financial status. The trial court found for the Hugheys, as they had detrimentally relied on the purchasers' solvency. The appellate court agreed, rejecting Rainwater Partners' contention that it had merely been an agent for the purchaser and not for the seller. The court reasoned that brokers owe duties of honesty, candor and fair dealing to all those with whom they deal, even in the absence of an express principal/agency relationship.

In this case Jim Tingle, employed by ASK Realty, claims that he did the usual preliminary qualifications of the Rains based on information which they supplied. This included their income and an oral promise by Scott Rains' father that he would supply the down payment. ASK claims that based on this information Tingle utilized formulas and guidelines standard to the industry in determining that the Rains were qualified buyers. However, ASK has not elaborated on what specific guidelines were used.

We hold that appellants are entitled to a trial on the merits of their claim against ASK Realty, as there are genuine issues of material fact concerning ASK's competency in the transaction.

Accordingly, the judgment is reversed and this case is remanded for proceedings consistent with this opinion.

All concur.