**Bryan WALDRIDGE and Sonja Waldridge, Appellants,**

v.

**HOMESERVICES OF KENTUCKY, INC., d/b/a Rector–Hayden Realtors and Alma L. Hopkins, Appellees.**

No. 2010–CA–000264–MR.

Court of Appeals of Kentucky.

April 29, 2011.

Rehearing Denied Aug. 25, 2011.

---

Phillip M. Moloney (argued), Lexington, KY, for appellants.

Jeffrey C. Rager (argued), Lexington, KY, for appellee.

Before MOORE and THOMPSON, Judges; LAMBERT,[1] Senior Judge.

## OPINION

THOMPSON, Judge:

This is an action against Homeservices of Kentucky, Inc. d/b/a Rector–Hayden Realtors, a real estate brokerage firm and its agent, Alma L. Hopkins, for failure to disclose material conditions relating to the sale of residential property and breach of fiduciary duties allegedly owed to Bryan and Sonja Waldridge. The circuit court granted summary judgment upon its review of the evidence of record and upon the doctrine of *res judicata* arising from a prior administrative proceeding before the Kentucky Real Estate Commission.

In 2005, after Bryan Waldridge accepted a position at a Lexington equine hospital, the Waldridges began their search for a home in the Lexington area. In anticipation of their move from Alabama, the Waldridges contacted Lori Lawson of Rector–Hayden Realtors to assist them in locating a home. In the process of their search, the Waldridges were shown a home located on Leesburg Road, which they ultimately purchased and is the subject of the present action.

The multi-level home was constructed in 1988 and first owned by Stephen and Charmin Watson. After substantial water damage from flooding occurred on three subsequent occasions, the Watsons listed the home for sale with Sue Lawrence of Rector–Hayden Realtors. After the home

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

did not sell, it was auctioned at which time notice was given by a Rector–Hayden Realtors' auctioneer that the home had been flooded on several occasions.

Ellis and JoAnne Blinksky purchased the property in 1995. The home flooded in 1997 and 1998. Because of the substantial water damage, the Blinskys filed an insurance claim with the National Flood Insurance Program resulting in total payments of $34,675.18. The Blinskys listed the property for sale with Bruce Holle of Rector–Hayden Realtors in February 1999 and completed a full disclosure statement detailing the flooding.

Ultimately, the Kulkas purchased the residence and a Rector–Hayden Realtors' agent again assisted in the sale. The Kulkas sold the house seventeen months later to the Singers who, in July 2001, filed a claim with the National Flood Insurance Program that resulted in a payment of $32,027.01. Subsequently the Singers sold the home to the Marcums who, after seventeen months, sold it to Doug and Corinne Golubics, the Waldridges' predecessors in title.

In the summer 2004, the Golubics listed the home for sale with Cindy Mullins–Taylor of Rector–Hayden Realtors. The Golubics completed a seller's disclosure of property condition statement on which they noted water damage occurred because of a sump pump failure but omitted any disclosure regarding prior flooding. However, Mullins–Taylor stated that she was informed of flooding by neighbors.

After the listing contract with Mullins–Taylor expired, the Golubics listed the home with Alma Hopkins of Rector–Hayden Realtors and again noted on the home disclosure statement only that the sump pump had failed causing water damage. After they purchased the residence on April 15, 2005, for $253,500, the Waldridges met various neighbors who inquired if they were familiar with the home's flooding history. The Waldridges responded that they were only aware of water into the basement attributable to a sump pump failure.

The Waldridges decided to sell the property and listed it with Cardinal Realty Group. After the listing contract expired, the Waldridges' agent informed them that the property would not be relisted because it was "stigmatized" and "all the realtors know about it." Since the time the Waldridges have owned the home, flood water has entered the lower level of the home on three occasions.

After learning the home's history and that Rector–Hayden Realtors and its agents had been involved in the sale of the property on five separate occasions, the Waldridges submitted a complaint to the Kentucky Real Estate Commission (KREC) against Ray Rector, the principal broker for Rector–Hayden Realtors, and Hopkins. After receiving Hopkins' and Rector's answer, without permitting any evidence to be submitted and without conducting a hearing, the KREC issued an order summarily dismissing the Waldridges' complaint. The Waldridges filed the present action in the Scott Circuit Court against the Golubics, the brokerage firm of Homeservices of Kentucky, Inc., d/b/a Rector–Hayden Realtors and Alma Hopkins.[2]

Rector–Hayden Realtors and Hopkins filed a motion for summary judgment on the basis that there was no material issue of fact. Although the circuit court denied the initial motion, it granted a second mo-

---

**2.** The Waldridges settled their claim against the Golubics and, therefore, the Golubics are not parties to this appeal.

tion finding that the action was precluded by the doctrine of *res judicata* and, in contradiction of its original finding, found that there was no material issue of fact as to the claims for fraud and breach of fiduciary duties.[3]

We first address whether the Waldridges' complaint is barred by the doctrine of *res judicata*. The doctrine and legal requirements were explained in *Yeoman v. Com., Health Policy Bd.*, 983 S.W.2d 459, 464–465 (Ky.1998):

> The rule of res judicata is an affirmative defense which operates to bar repetitious suits involving the same cause of action. The doctrine of res judicata is formed by two subparts: 1) claim preclusion and 2) issue preclusion. Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action. Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action. The issues in the former and latter actions must be identical. The key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts. If the two suits concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was or could have been brought in support of the cause of action.[4] (footnote and internal citations omitted)

A basic premise of *res judicata* is that there must have been a prior adjudication of either a claim or issue that is the subject of the recent action. Before dismissing a complaint based on *res judicata*, it must be demonstrated that the issues presented in the subsequent action were "actually litigated and determined in the first action." *Whittenberg Engineering & Const. Co. v. Liberty Mut. Ins. Co.*, 390 S.W.2d 877, 883 (Ky.1965).

Rector–Hayden Realtors and Hopkins argue that the doctrine is applicable to administrative decisions. We do not disagree with this general legal premise but believe it cannot be construed so broadly as to usurp the most fundamental premise of our jurisprudence. The right to seek redress through our judicial system is reflected in our Constitution, our Civil Rules of Procedure, and our case law.

Although *res judicata* has long been accepted in this Commonwealth and furthers the purpose of judicial expediency, it must be applied with caution and with the assurance that a party has had the opportunity to litigate. Section 7 of the Kentucky Constitution embodies the sacred right of a trial by jury. CR 38.01 states: "The right of trial by jury as declared by the Constitution of Kentucky or as given by a statute of Kentucky shall be preserved to the parties inviolate."

> The constitutional term "inviolate" means that the right to trial by jury is unassailable. Henceforth, legislation and civil rules of practice shall be construed strictly and observed vigilantly in favor of the right and is not to be abrogated arbitrarily by the courts. The

---

3. The Waldridges also alleged negligent misrepresentation which the circuit court summarily dismissed. Because that issue is not presented in this appeal, it is not addressed.

4. In *Yeoman*, the court noted that the term *res judicata* is the Latin term that encompasses issue and claim preclusion and is not to be used synonymously with either individually, but applies equally to both. Collateral estoppel is a term used by some to refer to issue preclusion. In their answer, Rector–Hayden Realtors and Hopkins alleged estoppel, thus, we conclude that the defense was properly before the court.

constitutional right to a jury trial cannot be annulled, obstructed, impaired, or restricted by legislative or judicial action. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 908 S.W.2d 104, 108 (Ky.1995).

Our case law has consistently adhered to the premise that the parties be afforded the right to litigate. In *Godbey v. University Hospital of the Albert B. Chandler Medical Center, Inc.*, 975 S.W.2d 104, 105 (Ky.App.1998), this Court held that "decisions of administrative agencies *acting in a judicial capacity* are entitled to the same res judicata effect as judgments of a court." *Id.* (citation omitted)(emphasis added). Because of the constitutional implications, our emphasis on the phrase "acting in a judicial capacity" is not inconsequential.

■ The term judicial capacity was explained by the U.S. Sixth Circuit Court of Appeals: "An administrative board acts in a judicial capacity when it hears evidence, gives the parties an opportunity to brief and argue their versions of the facts, and the parties are given an opportunity to seek court review of any adverse findings." *Nelson v. Jefferson County, Kentucky*, 863 F.2d 18, 19 (6th Cir.1988). Thus, if the doctrine of *res judicata* applies, the KREC must have acted in a judicial capacity when it dismissed the Waldridges' complaint. Our analysis begins with KRS Chapter 324 and the KREC's disposition of the Waldridges' complaint.

The complaint was filed with the KREC pursuant to KRS Chapter 324 *et seq.*, which is a statutory scheme enacted for the purpose of keeping "within the bounds of good business ethics those engaged in the real estate business, and to protect the public from unscrupulous real estate brokers and agents." *Shelton v. McCarroll*, 308 Ky. 288, 291, 214 S.W.2d 396, 398 (1948). In addition to giving the KREC authority to grant real estate licenses, it provides a procedure for a party aggrieved by the action of a licensee to submit a complaint to the KREC. KRS 324.160(4) provides in pertinent part that sanctions may be imposed against a licensee for:

(b) Making any substantial misrepresentation or failing to disclose known defects which substantially affect the value of the property;

(c) Making any false promises of a character likely to influence, persuade, or induce;

(d) Pursuing a continued and flagrant course of misrepresentation or making false promises through agents or advertising or otherwise . . .

In addition to sanctions, the KREC is granted the authority to award damages not to exceed $20,000, to a party aggrieved by a violation of KRS 324.160 from the real estate education, research, and recovery fund. KRS 324.410(1). Further, the KREC is subrogated to all of the rights of the aggrieved party to the extent of the payment. KRS 324.420(5). Moreover, if the complaint does not constitute a *prima facie* case, the KREC can summarily dismiss the complaint without a hearing. KRS 324.420(1).

■ In this case, the KREC did not permit discovery, did not hear evidence, did not conduct a hearing, did not conduct an investigation, and did not provide the Waldridges the opportunity to brief and argue their contentions. Instead, it *sua sponte* issued an order that merely stated: "The complaint in this matter fails to set forth a legitimate issue under KRS Chapter 324 and is hereby dismissed without further investigation or hearing." Totally absent from the KREC's decision were any findings of fact or indicia of a judicial proceeding. Because there was no litigation that would comport with due process

of law at the KREC level, the KREC order has no preclusive effect.

Having concluded that *res judicata* is not applicable, we address whether Rector–Hayden Realtors and Hopkins were entitled to summary judgment. In reviewing summary judgments, we note that:

> While it has been recognized that summary judgment is designed to expedite the disposition of cases and avoid unnecessary trials when no genuine issues of material fact are raised ... the rule is to be cautiously applied. The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor. Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact. The trial judge must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists. It clearly is not the purpose of the summary judgment rule, as we have often declared, to cut litigants off from their right of trial if they have issues to try.

*Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991) (citations omitted).

 Fraud is a common law tort that encompasses both fraudulent misrepresentation and fraudulent omission. The elements only differ slightly. Fraudulent misrepresentation must be established by clear and convincing evidence and requires that the plaintiff prove the following elements: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury. *United Parcel Service Co. v. Rickert,* 996 S.W.2d 464, 468 (Ky. 1999). To prevail on a claim of fraudulent omission, a plaintiff must prove: (a) a duty to disclose a material fact; (b) a failure to disclose a material fact; and (c) that the failure to disclose a material fact induced the plaintiff to act and, as a consequence, (d) to suffer actual damages. *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.,* 113 S.W.3d 636, 641 (Ky.App.2003). A caveat to the necessary elements under either claim is that "mere silence does not constitute fraud where it relates to facts open to common observation or discoverable by the exercise of ordinary diligence, or where means of information are as accessible to one party as to the other." *Bryant v. Troutman,* 287 S.W.2d 918, 920–921 (Ky.1956).

 In the context of real estate transactions, it is the general rule that "where no direct representation is made by the vendor concerning definite facts and the purchaser has sufficient opportunity to observe the condition of the premises, the maxim of caveat emptor is applicable[.]" *Fannon v. Carden,* 240 S.W.2d 101, 103 (Ky.1951). However, the maxim does not exonerate the seller from liability for common law fraud.

> In the sale of real estate the intentional suppression of facts known to the seller and unknown to the purchaser is ground for an action for deceit if the purchaser was damaged by reason of the fraudulent concealment. Where there is a latent defect known to the seller and he remains silent with the knowledge that the buyer is acting on the assumption that no defect exists, the buyer has a cause of action against the seller for an intentional omission to disclose such latent defect. 23 Am.Jur. '*Fraud and Deceit,*' § 78, p. 854; *Highland Motor Transfer Co. v. Heyburn Bldg. Co.,* 237 Ky. 337, 35 S.W.2d 521 [ (1931) ], and the several authorities cited therein on page 523; *Kaze v. Compton,* Ky., 283 S.W.2d

204 [ (1955) ]. However, mere silence does not constitute fraud where it relates to facts open to common observation or discoverable by the exercise of ordinary diligence, or where means of information are as accessible to one party as to the other. 23 Am.Jur. 'Fraud and Deceit,' § 84, p. 863.

*Bryant,* 287 S.W.2d at 920–921.

Because the Waldridges settled their claims against the Golubics, the issue presented is whether Rector–Hayden Realtors and Hopkins can be held liable for any fraudulent conduct committed. The issue has been repeatedly addressed by courts and scholars. *See e.g.;* Robert L. Raper & Andrew J. Vandiver, *Real Estate Broker Liability,* 36 N. Ky. L.Rev. 409 (2009); Brett L. Hopper, *The Selling Real Estate Broker and the Purchaser: Assessing the Relationship,* 1992 B.Y.U. L.Rev. 1135 (1992).

At least one court has taken a broad view of a seller's real estate agent's duties to a potential buyer. In *Walter v. Moore,* 700 P.2d 1219 (Wyo.1985), the Court expressed the view that real estate agents are held to a higher standard in dealing with third parties than are general agents:

A real estate agent is held to a higher standard in dealing with third parties than are general agents. There is a reason for the distinction between the two types of agency. Real estate salespersons are held to a higher standard concerning duties to third parties, i.e., buyers, because of the peculiar and unique nature of their profession. In the ordinary course of business the buyer will contact a broker or salesperson at a real estate office. The broker or salesperson will obtain information concerning earnings, income, assets, and net worth to ascertain the buyer's ability to qualify for a loan. The real estate agent will determine the buyer's wishes with respect to type of dwelling and location. The real estate agent then may spend weeks or months with the buyer showing dwelling houses to him, discussing sale prices, appraisals, values, and suggesting offers that might be made. A close trusting relationship often develops between the two. Offers made are conveyed by the real estate agent. The buyer relies upon his real estate agent for information and advice. The buyer often is not sophisticated and does not understand that the salesperson is the agent of the seller. It is for this policy reason that the real estate agent or broker is held to owe a duty to both the seller who employs him and the buyer to whom real estate is sold. Thus, the real estate agent is vastly different from a general agent whose duty is to represent and act faithfully on behalf of his principal.

Expressing similar reasoning, in *Hermansen v. Tasulis,* 2002 UT 52, 48 P.3d 235, the Court held that even in the absence of a fiduciary duty, a real estate agent hired by the seller is expected to be honest, ethical and competent and owes a duty to third persons involved in a real estate transaction.

The view expressed by our sister states is embodied in the Real Estate Brokers and Salesman License Act codified in KRS Chapter 324. As a prerequisite to receipt of a license, the applicant must be found "trustworthy and competent to transact the business of a broker or sales associate in a manner to safeguard the interest of the public. . . ." KRS 324.045. Furthermore, the legislature specifically provided for the imposition of sanctions against any broker for "[m]aking any substantial misrepresentation or failing to disclose known defects which substantially affect the value of the property. . . ." KRS 324.160(4)(b). Significantly, the Act does not limit an

agent's duty to refrain from misrepresenting or failing to disclose material facts to parties with whom the realtor is in privity and the courts have not imposed such a restriction.

Consistent with the standards to which real estate agents must comply, in *Givan v. Aldemeyer/Stegman/ Kaiser, Inc. (Ask Realty)*, 788 S.W.2d 503 (Ky.App.1990), the Court emphasized that real estate brokers owe duties to the public in general and not simply their principals. It emphasized that the "National Association of Realtors Code of Ethics contains 24 Articles outlining the duties of realtors in general terms. Article 7 requires that the realtor treat fairly all parties to the transaction." *Id.* at 505. The Court concluded that broker's are professionals with the duty to adhere to the legal obligation of honesty, candor and fair dealing "to all those with whom they deal, even in the absence of an express principal/agency relationship." *Id.*

We reaffirm the holding in *Givan.* Under Kentucky's Real Estate Brokers and Salesman License Act, even absent an agency relationship, real estate brokers and agents occupy a position of trust and owe a duty to exercise good faith. However, we are not imposing upon realtors the duty to inspect the property or for negligent omissions or misrepresentations.

██ Further, we stress that brokers and agents are only liable for their fraud. The degree of proof required to impose liability is not easily met and requires actual knowledge of a material fact affecting the value of the property purchased. The Utah appellate court explained the scope of a realtor brokers' potential liability as follows:

> Oftentimes, . . . real estate agents and sellers are understandably unaware of latent defects in the home at the time of sale. This is an inherent risk involved in purchasing a home. Thus, the mere fact that the real estate agent has a duty to disclose known defects to potential purchasers does not mean that the [seller's] agent is liable for all subsequent problems that come to light. The purchasers must also demonstrate that the real estate agent misrepresented, or had prior knowledge of, defects in the home. Only when the purchaser can establish that the agent had both the duty to disclose and knowledge of the defects is recovery appropriate.

*Schafir v. Harrigan,* 879 P.2d 1384, 1390 (Utah Ct.App.1994).

██ "Accordingly, we do not impose upon real estate professionals a duty to conduct independent inspections of property they sell. However, when real estate professionals undertake to secret known material defects, they breach their duty to be honest, ethical, and competent and are liable for their actions." *Hermansen,* 48 P.3d at 241.

██ We likewise hold that a realtor has no duty to inspect property for defects. Their liability is only for actions sufficient to be considered fraudulent. We are aware that in instances where the realtor has actual knowledge that a seller or buyer is perpetuating a fraud, the realtor will have a dilemma which could jeopardize the client's financial interests. However, such a dilemma is encountered by professionals in other practices, including the law, but is one that must be resolved in the greater public interest and consistent with the applicable standards and codes of conduct. The law does not tolerate fraudulent conduct by the general public and cannot be tolerated by those acting in a professional capacity.

We have set forth the legal premises for our discussion of the facts. As presented by the parties to the trial court and this Court, the focus of dispute is whether Rec-

tor–Hayden Realty and/or Hopkins had actual knowledge of the extensive flooding. Because we are reviewing a summary judgment, we are mandated to view the facts most favorably to the Waldridges. Thus, we concisely reiterate the pertinent affirmative evidence presented by the Waldridges in opposition to the summary judgment:

(1) Rector–Hayden Realtor, Lori Lawson, was contacted by the Waldridges to purchase a home and Rector–Hayden Realtor, Alma L. Hopkins, was the listing agent employed by the Golubics;

(2) The home has a history of extensive flooding resulting in substantial insurance claims;

(3) Since the home was built, it has been sold eight times and, on seven of those occasions, Rector–Hayden Realtors' agents were involved in the listing, sale, auction, or acted as the agent for the buyer or seller of the home;

(3) A Rector–Hayden Realtor agent auctioned the home prior to the Waldridges purchase and at the time gave notice to potential purchasers that the home had flooded.

(4) During the time the Golubics owned the home and when listed for sale with Rector Hayden through its agent Cindy Mullins–Taylor, a prospective purchaser canceled the contract because of concerns regarding the flooding history.

(5) Despite that the home had flooded when owned by the Golubics and they recovered substantial flood insurance benefits, on the home disclosure statement the Golubics noted only an isolated water incident in the basement.

(6) Hopkins admitted that the disclosure statement was inaccurate;

(7) Affidavits submitted by prior owners of the home confirmed that the flooding was significant and prior seller disclosure forms completed by Rector–Hayden clients described the extensive flooding and its frequency;

(8) Rector–Hayden Realtors' agents were informed of the flooding by neighbors and home inspection reports.

(9) Despite that the prior disclosure forms completed by prior owners and who listed the property for sale with Rector–Hayden Realtors that detailed the flooding, the Golubics only noted that a sump pump had previously caused water damage.

(10) While the property was listed with Rector–Hayden Realtors, Hopkins received a telephone call from an unidentified caller informing her that the property had flooded in the past, but she did not attempt to track the source of the call.

(11) After the purchase, the Waldridges were informed by an agent unassociated with Rector–Hayden Realtors that the home could not be listed for sale because virtually all realtors knew of the flooding history;

(12) Prior to the purchase, the Waldridges were unaware of the home's flooding history;

and;

(13) A home inspection prior to the sale to the Waldridges failed to reveal the extent of the prior flooding.

█ The facts present a unique situation where Rector–Hayden Realtors' agents had been involved in the sale of the property and may have had actual knowledge of the flooding which caused damage to the home. Moreover, there is more than substantial evidence that the Golubics knew that the house had flooded yet in the disclosure statement failed to disclose the extent of the flooding and damage. Thus, there is a question of fact as to whether

Rector–Hayden Realtors or Hopkins knew the disclosure was false. Although there is conflicting evidence, under the circumstances, we cannot say that there is no material issue of fact warranting a summary judgment and precluding trial.

We neither reach the merits of the Waldridges causes of action nor debate the factual issues. At the summary judgment stage, such an inquiry is beyond the scope of our review. We hold that a seller's real estate agent owes a duty to a buyer to not commit fraud by either misrepresenting a material fact or failing to disclose a material fact of which they have actual knowledge and of which the buyer is unaware. The potential liability imposed is no greater than that imposed by the principles of common law fraud.

Finally, the issue of whether Rector–Hayden Realtors and Hopkins owed a fiduciary duty to the Waldridges as dual agents for the Waldridges and the Golubics was not addressed by the circuit court in the summary judgment. Although the circuit court originally found that a fiduciary duty existed, it made no finding regarding the issue in its final judgment. Therefore, we leave the issue to be addressed by the circuit court on remand.

Based on the foregoing, the summary judgment is reversed and the case remanded for further proceedings.

LAMBERT, Senior Judge, concurs.

MOORE, Judge, dissents and files a separate opinion.

5. Kentucky Administrative Regulation.

6. The majority opinion cites authority from Wyoming and Utah to support its assertion that real estate agents owe a duty of disclosure to the public, which at best could be

MOORE, Judge, dissenting:

Respectfully, I must dissent. I find no evidentiary support for a claim of fraudulent misrepresentation. To maintain an action for fraudulent misrepresentation, a party must prove that some material representation was made. *United Parcel Service Co. v. Rickert,* 996 S.W.2d 464, 468 (Ky.1999).

"[M]ere silence does not constitute fraud where it relates to facts open to common observation or discoverable by the exercise of ordinary diligence, or where means of information are as accessible to one party as to the other." *Bryant v. Troutman,* 287 S.W.2d 918, 920–21 (Ky.1956). The Waldridges do not allege any affirmative misrepresentation by Rector–Hayden or Hopkins. Furthermore, a duty of disclosure must exist before an action for fraud by omission can be maintained. *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.,* 113 S.W.3d 636, 641 (Ky.App.2003).

The Kentucky General Assembly has unequivocally addressed the disclosure requirements with respect to the real estate profession in 201 KAR[5] 11:121.[6] I do not believe that 201 KAR 11:121 imposes a duty to disclose upon an agent where no contractual relationship exists. Counsel for the Waldridges conceded at oral argument that Hopkins acted only as the seller's agent. Pursuant to the Kentucky Administrative Regulations, an agent's duty is clearly limited to his client. 201 KAR 11:121 Section 1(4). Additionally, imposing a duty in instances where no contractual relationship exists creates inconsistent obligations for the agent. For example, an agent cannot owe a duty of confidentiality

considered as persuasive authority. However, even if this could be considered persuasive authority, it does not usurp our duty to enforce the law as enacted by the Kentucky General Assembly.

to his client, 201 KAR 11:121 Section 1(4)(d), while owing a duty of disclosure, 201 KAR 11:121 Section 1(4)(c), to a third party. The majority has created a new cause of action by holding that such a duty exists.

Furthermore, the disclosure requirements with respect to the sale of a single-family home are clearly outlined in KRS 324.360. The statute requires homeowners who enlist an agent to sell their home to complete a disclosure form regarding known conditions of the property, KRS 324.360, but the disclosure is not intended as a substitute for an inspection or home warranty. *Yeager v. McLellan*, 177 S.W.3d 807, 808 (Ky.2005).

Moreover, the agent's only statutory duty with regard to the disclosure is to provide potential buyers with a copy of the disclosure or, alternatively, to disclose the seller's refusal to complete the disclosure. KRS 324.360(4) & (8). The statute imposes no duty on the agent to ensure that the disclosure is complete or accurate or to disclose any knowledge to the contrary. It merely requires that the agent act as an intermediary in conveying the seller's information to potential buyers. Where the disclosure contains omissions or errors, the buyer's cause of action is against the seller. *See Ross v. Powell*, 206 S.W.3d 327, 329 (Ky.2006); *Yeager*, 177 S.W.3d at 809–10. The majority creates a new cause of action not contemplated by KRS 324.360 by finding that an agent has an affirmative duty to make disclosures to the buyer.

In this case, the Waldridges were put on notice that the home had prior water damage issues. They were afforded an opportunity to obtain an inspection, which they did, and which disclosed potential issues concerning the grading of the property and the possibility of water trapped around the home. Also, a cursory inspection of the public property records would have alerted them to the fact that the property had changed hands numerous times. Clearly, the Waldridges had ample opportunity to inquire into the history and condition of the home and that information was equally accessible to all parties. Therefore, no genuine issue of material fact existed regarding the alleged claims of fraud, and summary judgment was appropriate.

Also, the Waldridges have failed to present evidence of damages. While the Waldridges indicate that they are unable to sell the property, they do not support this allegation with affirmative evidence. Moreover, they ignore any number of other factors that might be responsible for the unsuccessful sale, including, but not limited to, the recent downturn in the real estate market.

The Waldridges have further failed to present *affirmative* evidence that prior incidents of flooding affected the value of the property, and they have ignored the fact that since December 1991, the home has *sold* seven times. The purchase contract the Waldridges entered into was contingent upon the property appraising at the contract price. Thus, it is fair to assume that the home appraised at $253,500, the amount they paid for it. This amount is actually over $42,000 more than the prior owners paid for it only two years before the Waldridges purchased it. The Waldridges attached a chart to their brief which reflected an appreciation in the value of the property of approximately $85,000 since the flooding occurred in 2001. Accordingly, based on these facts, it is impossible to formulate what damages they have actually suffered.

Therefore, I respectfully dissent.