RENDERED: NOVEMBER 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1118-MR

LEWIS SEMERLING AND ANGELA
SEMERLING                                                        APPELLANTS


                    APPEAL FROM CALLOWAY CIRCUIT COURT
v.                  HONORABLE ANDREA L. MOORE, JUDGE
                    ACTION NO. 23-CI-00011


BPP, LLC D/B/A BLACK PEARL
PROPERTIES, LLC AND JOHN J.
DARNALL, II                                                        APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: A. JONES, L. JONES, AND KAREM, JUDGES.

JONES, A., JUDGE: Lewis and Angela Semerling (collectively referred to herein

as "Appellants") appeal from the Calloway Circuit Court's order granting

judgment on the pleadings in favor of BPP, LLC d/b/a Black Pearl Properties,

LLC, ("BPP") and John J. Darnall, II (collectively referred to herein as

"Appellees"). The circuit court concluded that no material facts were in dispute and that Appellees were entitled to judgment as a matter of law based primarily on Appellants' admission that Darnall had never resided on the property.

Upon review, we conclude the circuit court erred. Appellants' complaint alleged detailed facts supporting claims of fraud, misrepresentation, negligence, and violation of KRS[1] 324.360, all of which, if proven, could establish that Appellees knew about defects in the property that they failed to disclose to Appellants. Appellees' reliance on Appellants' acknowledgment that Darnall never lived in the home did not negate those allegations or otherwise satisfy their burden of showing entitlement to judgment as a matter of law. Accordingly, we reverse the circuit court's order and remand for further proceedings consistent with this Opinion.

## I. BACKGROUND

This appeal stems from the sale of a residence at 1706 Holiday Drive in Murray, Kentucky. In 2021, BPP, with Darnall as its principal member, acquired the property as part of a short-term investment project. Darnall never lived in the home, but BPP carried out extensive renovations and cosmetic improvements to prepare it for resale. Appellants describe the property as a "flip."

---

[1] Kentucky Revised Statutes.

In October 2021, BPP listed the property for sale. Appellants viewed the property through a family member rather than in person. They received a Seller's Disclosure of Property Condition ("Disclosure"), which identified Darnall as the BPP representative who completed the form and explicitly stated that the seller had never lived in the home. The Disclosure also indicated that, to the seller's knowledge, the roof, plumbing, and structural components were in satisfactory condition and that there were no known material defects. Relying partly on those representations, Appellants submitted an offer, negotiated a purchase contract, and ultimately bought the home for approximately $315,000. They closed on the property later that month.

After moving into the home, Appellants allege they discovered numerous defects that had been concealed or not disclosed during the sale. These included: roof leaks, water intrusion and rot beneath the bathrooms, crumbling brickwork and leaning support columns, exposed wiring and missing junction box covers, concealed cracks in drywall and foundation areas, an unsealed vapor barrier, and defective flooring and plumbing installations. Appellants assert that these conditions existed during BPP's ownership and renovation of the property and that, given the extent of the work done, BPP and Darnall knew or should have known about the defects when filling out the Disclosure.

In February 2023, Appellants filed this action against BPP and Darnall, asserting claims for fraud, negligent misrepresentation, violation of KRS 324.360 (failure to disclose property condition),[2] negligence, respondeat superior,

---

[2] This statute provides:

> (1) This section shall apply to sales and purchases involving single-family residential real estate dwellings if any person licensed under this chapter receives compensation.
>
> (2) The commission shall promulgate an administrative regulation authorizing a "seller's disclosure of conditions form."
>
> (3) The form shall provide for disclosure by the seller of the following:
>
>> (a) Basement condition and whether it leaks;
>> (b) Roof condition and whether it leaks;
>> (c) Source and condition of water supply;
>> (d) Source and condition of sewage service;
>> (e) Working condition of component systems; and
>> (f) Other matters the commission deems appropriate.
>
> (4) The seller of the property shall complete and sign the form at the time he or she executes any listing agreement or similar agreement by which a licensee intends to market the property. A copy of the form shall be provided by the listing agent to any prospective buyer or a buyer's authorized representative upon request. A copy of the form shall be delivered by the listing agent to any prospective purchaser or his representative within seventy-two (72) hours of the listing agent's receipt of a written and signed offer to purchase. The listing agent shall solicit the signature of the buyer on a copy of the form which the listing agent shall retain in the principal broker's records. The signature shall evidence the listing agent's compliance with the provisions of this section. Should the buyer refuse to sign the form, the licensee shall record the buyer's refusal to sign on the form and retain a copy in his principal broker's records.
>
> (5) If the subject property is offered for sale by the property's owner without a listing agreement, any licensee involved in the transaction shall provide a blank form to the property's owner and shall request that the property's owner complete and sign the form. If the property's owner completes and signs the form, the licensee shall deliver the form to the buyer or potential buyer not later than one hundred twenty (120) hours after the creation of any executory contract for sale of the property. The licensee shall solicit the signature of the buyer on a copy of the

-4-

and punitive damages. They also named The Inspector, LLC, Ed Frazier, and Josh Armas (the home inspection company and its employees) as additional defendants. The circuit court subsequently granted judgment on the pleadings in favor of the inspection defendants, concluding that the claims against them were barred by the contractual limitations period,[3] leaving only Appellants' claims against BPP and Darnall.

---

form as delivered to the buyer or prospective buyer and shall retain the copy in his or her principal broker's records. The signature of the buyer or prospective buyer shall evidence the listing agent's compliance with the provisions of this section. Should the buyer refuse to sign the form, the licensee shall record the buyer's refusal to sign on the form and retain a copy in his or her principal broker's records.

(6) The original of the form shall be retained by the listing broker or by the broker of any licensee who presents an offer on a property not subject to a listing agreement.

(7) The form shall not be required for residential purchases of new homes if a warranty is offered, for a sale of real estate at an auction, or for a court supervised foreclosure.

(8) If the seller refuses to complete and sign the form, his refusal shall be communicated in writing by the broker or sales associate who is involved in the transaction to the purchaser or prospective purchaser, without unreasonable delay.

(9) It shall be a violation of this chapter for a licensee to complete any portion of the form unless the licensee is the owner of the property or has been requested by the owner to complete the form. The request shall be acknowledged in writing on the form and the licensee shall be held harmless for any representation that appears on the form.

KRS 324.360.

[3] Those rulings are not at issue in this appeal.

Following their answer, Appellees moved under CR[4] 12.05[5] for a more definite statement, arguing that Appellants' fraud-based counts lacked the specificity required by CR 9.02.[6] The circuit court granted the motion and directed Appellants to clarify their allegations. Appellants then filed an Amended More Definite Statement on February 28, 2023, clarifying their fraud and misrepresentation claims. They alleged that Darnall, acting as BPP's agent, oversaw the home's renovation and personally observed numerous construction deficiencies—such as leaks, structural deterioration, and electrical and plumbing issues—but failed to disclose them in the Disclosure signed on October 11, 2021. Appellants further alleged that Darnall verbally represented that certain leaks had been repaired before closing and that they relied on those representations in deciding to purchase the property for $315,000. The statement also itemized claimed damages, including closing costs, interest, and more than $30,000 in repair expenses.

---

[4] Kentucky Rules of Civil Procedure.

[5] "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing his responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after service of notice of the order or within such time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just." *Id.*

[6] "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.*

-6-

Appellees' motion mainly relied on two materials outside the pleadings: Appellants' responses to requests for admission and a Facebook post authored by Angela several months after the closing. In the admissions, Appellants acknowledged that Darnall had never lived in the home and that they had not communicated with Darnall or any BPP representative before buying the property. They clarified, however, that they received and depended on the Disclosure Darnall completed on behalf of BPP when deciding to purchase the home. Appellees also included a lengthy Facebook post in which Angela described discovering defects after moving in and criticized Darnall and BPP. Appellees cited the post to challenge Appellants' denials of post-closing contact and to question their credibility, rather than to prove any fact essential to the claims.

Appellants filed a consolidated response requesting that the circuit court either exclude the materials outside the pleadings or, if it considered them, that it treat the motions as motions for summary judgment under CR 56. They argued that discovery was ongoing and that genuine issues of material fact remained regarding Appellees' knowledge of the property's condition and their duty of disclosure.

On September 6, 2024, the circuit court entered a brief order granting the motions for judgment on the pleadings. The order stated, in relevant part, that "by Plaintiffs' own admission they were aware when they received the disclosure

that BPP's representative, Darnall, had completed the disclosure and had never lived in the home. BPP and Darnall had no duty to disclose defects of which they had no knowledge." Concluding that "no material fact is in dispute," the circuit court entered final judgment in favor of Appellees. This appeal followed.

## II. ANALYSIS

On appeal, Appellants argue that the Calloway Circuit Court made a mistake by granting judgment on the pleadings because the court considered information outside the pleadings and applied an incorrect legal standard. They claim that the circuit court relied on materials outside the complaint: (1) their responses to requests for admission; and (2) an unverified Facebook post. They assert that it was inappropriate for the court to do so without first giving notice that it intended to treat the motions for judgment on the pleadings as ones for summary judgment. Additionally, Appellants state that even if the court properly considered these materials, they did not resolve any factual questions or entitle Appellees to judgment as a matter of law.

Appellants emphasize that their complaint, as clarified by their Amended More Definite Statement, alleged specific acts of concealment and misrepresentation sufficient to state claims for fraud, negligent misrepresentation, negligence, and violation of KRS 324.360. They note that the pleadings alleged that Darnall, acting through BPP, performed or oversaw extensive renovations on

-8-

the home and therefore knew or should have known of defects that were either concealed or omitted from the Disclosure. Because those allegations must be accepted as true at the pleading stage, they argue dismissal was premature.

Appellants also contend that even if the motion were treated as one for summary judgment, the result would be the same. No discovery had been completed, no affidavits or depositions were filed, and Appellees offered no evidence—beyond the admissions and Facebook post—affirmatively establishing their lack of knowledge. They maintain that their admissions that Darnall never lived in the home and that they did not communicate with him before the sale do not defeat their claims, particularly since they also stated that they received and relied upon the Disclosure he completed on behalf of BPP. In short, they argue that whether Appellees knew of and failed to disclose material defects remains an unresolved factual question inappropriate for disposition as a matter of law.

Appellees respond that the circuit court properly dismissed the complaint because, in their view, Appellants' own admissions foreclose recovery. They assert that Appellants conceded the key facts—namely, that Darnall had never resided in the property and that they had no pre-sale communications with him or BPP. From this, Appellees reason that they lacked personal knowledge of any defects and therefore owed no duty to disclose under KRS 324.360 or Kentucky common law. They argue that the Disclosure accurately reflected that

non-occupant status and that, absent proof of an intentional misstatement, no actionable misrepresentation occurred.

Appellees further maintain that the complaint fails to allege specific facts showing that they actually knew of the defects or made any false statements. In their view, the Amended More Definite Statement simply repeats speculative allegations that the property must have been defective during renovation, which is insufficient to meet the pleading standard for fraud. They also cite Angela's Facebook post—made after Appellants moved into the home and began discovering defects—as undermining their credibility and demonstrating that the fraud claim rests on hindsight and suspicion rather than evidence.

> CR 12.03 provides:
>
> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on such motion, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56.

*Id.*

"The purpose of the rule is to expedite the termination of a controversy where the ultimate and controlling facts are not in dispute." *City of Pioneer Village v. Bullitt Cnty. ex rel. Bullitt Fiscal Court*, 104 S.W.3d 757, 759 (Ky. 2003). Under CR 12.03, a motion for judgment on the pleadings serves to test

-10-

the legal sufficiency of a claim or defense based on the face of the pleadings. In resolving such a motion, the circuit court must accept as true all well-pleaded factual allegations of the opposing party, together with all reasonable inferences that may be drawn from them, and it must treat as false all allegations of the moving party that have been denied. *Archer v. Citizens Fidelity Bank & Trust Co.*, 365 S.W.2d 727, 729 (Ky. 1962), *as modified on denial of reh'g* (Mar. 22, 1963).

Judgment on the pleadings is appropriate only when, taking those allegations as true, it appears beyond doubt that the nonmoving party can prove no set of facts entitling him to relief. *City of Pioneer Village*, 104 S.W.3d at 759 (citing *Spencer v. Woods*, 282 S.W.2d 851 (Ky. 1955)). This demanding threshold reflects our reluctance to terminate potentially valid claims before the parties have had an opportunity to develop the facts through discovery. *See Russell v. Johnson & Johnson, Inc.*, 610 S.W.3d 233, 241-42 (Ky. 2020).

Here, the circuit court granted judgment on the pleadings based largely on two materials outside the pleadings—Appellants' responses to requests for admission and a Facebook post authored months after closing—without clearly converting the motion to one for summary judgment. Even setting aside that likely procedural defect, the court's ruling cannot stand under the governing substantive standards.

-11-

Significantly, the circuit court's reasoning suffers from a fundamental legal flaw: it conflates Darnall's non-residence with a lack of knowledge. These are distinct concepts. While Appellants conceded that Darnall never lived in the home, that admission does not establish—or even suggest—that he lacked knowledge of the home's defects. To the contrary, knowledge of property conditions can arise from numerous sources wholly independent of residence. A seller may acquire such knowledge by: personally inspecting the property during the renovation process; reviewing inspection reports commissioned during acquisition or renovation; receiving disclosures from prior owners or contractors; or, as alleged here, personally overseeing or performing extensive renovation work. Indeed, someone who directs a comprehensive renovation project—involving the roof, plumbing, electrical systems, flooring, and structural components—may well possess greater knowledge of hidden defects than a casual occupant ever would. Renovation work, by its nature, often exposes conditions that would remain concealed from ordinary residents.

The circuit court's conclusion that "BPP and Darnall had no duty to disclose defects of which they had no knowledge" improperly treated the non-residence admission as dispositive of the knowledge question. But Appellants' pleadings alleged precisely the opposite: that Darnall's role in overseeing renovations gave him actual or constructive knowledge of defects that he then

-12-

failed to disclose.  Whether Darnall in fact possessed such knowledge—and whether it arose from his renovation oversight, from inspections, from prior owner disclosures, or from other sources—are quintessential factual questions inappropriate for resolution on the pleadings.  The admission that he never resided in the home simply does not answer those questions.

In the context of real estate transactions, Kentucky generally adheres to the principle of *caveat emptor* when a purchaser has the opportunity to observe the property's condition and no representations are made.  *Fannon v. Carden*, 240 S.W.2d 101, 103 (Ky. 1951).  But that maxim does not shield a seller who knowingly conceals or fails to disclose a material latent defect.  *Waldridge v. Homeservices of Kentucky, Inc.*, 384 S.W.3d 165, 171 (Ky. App. 2011).  As long recognized, "the intentional suppression of facts known to the seller and unknown to the purchaser is ground for an action for deceit if the purchaser [is] damaged by reason of the . . . concealment."  *Bryant v. Troutman*, 287 S.W.2d 918, 920-21 (Ky. 1956).  Where a latent defect is known to the seller and he remains silent while aware that the buyer is acting on the assumption that no defect exists, a cause of action lies for intentional omission to disclose the defect.  *Id.*; *Waldridge*, 384 S.W.3d at 172.  However, mere silence does not constitute fraud where the condition is open, obvious, or discoverable through ordinary diligence.  *Bryant*, 287 S.W.2d at 921.

Accordingly, whether styled as fraud/fraudulent omission, negligent misrepresentation, statutory nondisclosure under KRS 324.360, or an ordinary common-law negligence claim, Appellants' theory is the same: that Appellees, as sellers, had a duty to disclose known latent defects and failed to do so. These overlapping claims rise and fall on factual questions of what Appellees knew about the property's condition and whether they concealed or misrepresented that knowledge. Those questions cannot be resolved on the pleadings alone. *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 582 (Ky. 2004).

Although Appellees argue that the fraud-based claims fail for lack of particularity under CR 9.02, that rule requires only that the circumstances constituting the fraud be stated with sufficient detail to inform the opposing party of the nature of the claim. The rule provides: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.* CR 9.02 "is to be considered in light of the entire spirit of modern pleading which lays emphasis upon short, concise and direct pleading." *Scott v. Farmers State Bank*, 410 S.W.2d 717, 722 (Ky. 1966). "It is not necessary that the 'particularity' commanded by CR 9.02 attain such detail as to recite each minute detail; it is enough to plead the time, the place, the substance

-14-

of the false representations, the facts misrepresented, and the identification of what was obtained by the fraud." *Id.*

Here, the complaint and Amended More Definite Statement identified the sale transaction, the date and content of the Disclosure signed by Darnall, the specific latent defects alleged to have been concealed (including roof leaks, structural damage, and moisture problems), and Appellants' reliance on those representations in deciding to purchase the property. These allegations are more than sufficient to satisfy CR 9.02 at the pleading stage. Whether Appellants can ultimately prove that Appellees knew of and failed to disclose the defects is a matter for discovery, not for disposition on the pleadings. *Presnell*, 134 S.W.3d at 582.

We review a judgment on the pleadings *de novo*, since such a ruling presents only questions of law. *Scott v. Forcht Bank, N.A.*, 521 S.W.3d 591, 594 (Ky. App. 2017). Under the standards discussed above, Appellees' motions could be granted only if, accepting all well-pleaded allegations in the complaint as true, and drawing all reasonable inferences in Appellants' favor, it appeared beyond doubt that Appellants could prove no set of facts entitling them to relief. *City of Pioneer Village*, 104 S.W.3d at 759.

Here, the circuit court considered matters outside the pleadings—namely, Appellants' responses to requests for admission and a Facebook post—without converting the motions to ones for summary judgment or affording the parties an opportunity to present Rule 56 materials. Even overlooking that procedural misstep, the pleadings standing alone foreclose dismissal. Under CR 12.03, Appellees are deemed to have admitted the truth of Appellants' well-pleaded allegations and the fair inferences that may be drawn from them. *Archer*, 365 S.W.2d 727. Taking those allegations as true, the complaint—when read together with the Amended More Definite Statement—adequately states claims for fraudulent omission, negligent misrepresentation, common-law negligence and/or statutory nondisclosure under KRS 324.360.

Although the circuit court's order expressly granted judgment on the pleadings, it also referenced "no material facts being in dispute," language more typically associated with summary judgment. Accordingly, we next consider whether the order could be upheld under CR 56.03.

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The moving party bears the initial burden of demonstrating that

no genuine issue of material fact exists.  Once that burden is met, the nonmovant must present affirmative evidence showing that a triable issue remains.  *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).  Because summary judgment terminates litigation before trial, it "is to be cautiously applied and should not be used as a substitute for trial."  *Id.* at 483.

Here, even if the circuit court intended to apply the summary-judgment standard, its conclusion that "no material fact was in dispute" is unsupported by the record.  As discussed above, the admissions and Facebook post, do not establish, as a matter of law, that Appellees lacked knowledge of the alleged defects before the sale.  Lack of residence does not equate to lack of knowledge, and the Facebook post, authored months after closing and describing post-purchase discoveries, has no bearing on what Appellees knew or disclosed before the sale.

No affidavits, depositions, or other competent proof were offered by Appellees to affirmatively negate the element of knowledge central to Appellants' claims.  Without such proof, the burden never shifted to Appellants to produce counter-evidence.  *Id.* at 482.  At this stage, discovery had barely begun; Appellants had not yet had a meaningful opportunity to develop evidence concerning the renovations or Appellees' awareness of the property's condition.  On this record, genuine factual issues plainly remain as to whether Appellees knew of and failed to disclose latent defects.

### III. CONCLUSION

For the foregoing reasons, the order of the Calloway Circuit Court granting judgment on the pleadings is reversed, and this matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Jeremy T. Pruitt
Murray, Kentucky

BRIEF FOR APPELLEES:

Warren K. Hopkins
Murray, Kentucky