*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0186p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

REPUBLIC BANK & TRUST COMPANY,
             *Plaintiff-Appellant*,

             *v.*

BEAR STEARNS & COMPANY, INC.;
FREDERICK W. BARNEY, JR.,; THE BEAR
STEARNS COMPANIES, JP MORGAN CHASE &
COMPANY,

             *Defendants-Appellees*.

No. 10-5510

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 09-00287—Charles R. Simpson III, District Judge.

Argued: November 16, 2011

Decided and Filed: June 20, 2012

Before: MERRITT, BOGGS, and CLAY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Laurence J. Zielke, ZIELKE LAW FIRM PLLC, Louisville, Kentucky, for
Appellant. Andrea Likwornik Weiss, LEVI, LUBARSKY & FEIGENBAUM LLP, New
York, New York, for Appellees. **ON BRIEF:** Laurence J. Zielke, Lester I. Adams, Jr.,
ZIELKE LAW FIRM PLLC, Louisville, Kentucky, for Appellant. Andrea Likwornik
Weiss, LEVI, LUBARSKY & FEIGENBAUM LLP, New York, New York, Dustin E.
Meek, TACHAU MEEK PLC, Louisville, Kentucky, for Appellees.

_____

**OPINION**

_____

BOGGS, Circuit Judge. Republic Bank & Trust Company bought more than fifty

million dollars worth of residential-mortgage-backed securities from Bear Stearns. It did

not read the relevant offering documents before investing. As the national economy crumbled in 2007 and 2008, so did the value of Republic's investments. In response, Republic brought this suit in 2009, alleging that Bear Stearns and one of its employees ("Appellees") fraudulently induced it to buy, and then to retain, the securities. It claimed that a series of misrepresentations and omissions, both oral and in the written offering documents, were actionable under common-law theories of fraud and negligent misrepresentation, and under the Blue Sky Law, Kentucky's securities statute. The court below dismissed Republic's suit with prejudice. This timely appeal, which raises questions of Kentucky fraud law and federal pleading standards, followed.

I

Frederick W. Barney, Jr., a senior manager at Bear Stearns, attempted to sell securities to Republic Bank & Trust throughout the late 1990s and early 2000s. He succeeded. On March 31, 2003, Republic purchased twenty million dollars of mortgage pass-through certificates, issued by the ABFS Mortgage Loan Trust 2003-1. Republic did not review the prospectus supplement for these certificates before making its purchase.[1] Nor could it have done so: Bear Stearns did not file the prospectus supplement until March 31, 2003, and Barney did not provide Republic with an advance copy. On October 2, 2006, Republic again bought mortgage-backed securities from Bear Stearns. This time, it purchased more than thirty-two million dollars of mortgage pass-through certificates from four separate issuing trusts, the Bear Stearns ALT-A Trust 2005-10, the Bear Stearns ARM Trust 2006-2, the Bear Stearns ARM Trust 2006-4, and the IndyMac INDX Mortgage Loan Trust 2006-AR11. Republic did not review prospectus supplements for any of these investments, even though such documentation was available for each at the time of purchase. Bear Stearns underwrote all of the securities that Republic bought; all had either AA or AAA credit ratings at the time of purchase.

---

[1] Prospectuses and prospectus supplements are documents that explain, among other things, the characteristics of a security and the risks that it may pose to investors.

The securities that Republic acquired were a species of asset-backed security known as mortgage pass-through certificates, or mortgage-backed securities. These investment vehicles consist of thousands of individual home loans, pooled together in a trust. The trust then issues certificates, sold primarily to large institutional investors, entitling the holder to periodic distributions based on mortgage payments by the borrowers.

The process of creating such a security is complex. First, an originator lends money directly to consumers. The securities in this case are residential-mortgage-backed securities, meaning that the originators' loans were home-mortgage loans. Originators of mortgage-backed securities often issue home loans to borrowers who could not obtain financing from other sources because of prior bankruptcies, outstanding judgments, or poor credit. These loans frequently do not conform to established underwriting standards, which require good-faith evaluation both of the borrower's ability to repay the loan and of the value of the property offered as collateral. After making or acquiring enough loans, the originator sells part or all of its portfolio to a sponsor, which structures securities by pooling the loans that it bought. Next, the sponsor sells the loans to a depositor. The depositor has two functions. First, it places the pooled-and-structured assets into an independently constituted trust, which, in return, issues the depositor certificates entitling the holder to distributions of principal and interest from the trust's assets. The depositor then transfers the certificates to underwriters such as Bear Stearns, who sell the certificates to investors. Often, a single trust issues different levels, or "tranches," of certificates, normally based on subordination rights or some type of insurance against the risk of default.

In early 2007, the media began to report problems with mortgage-backed securities. The market for such securities had expanded in 2006. As demand rose, underwriting standards declined. Originators began to make riskier loans, and the number of defaults skyrocketed. The value of mortgage-backed securities plummeted and helped fuel a nationwide economic crisis in 2007 and 2008. As the national economy declined, so did the value of the certificates Republic bought. As of December

31, 2008, Republic had lost over fourteen million dollars, and the rating agencies had downgraded or withdrawn each security's credit rating.

Republic filed suit on March 20, 2009. It alleged that Bear Stearns, through Barney and in the prospectus supplements it issued, made a number of misrepresentations and omissions, which induced Republic first to purchase, and then to retain, the mortgage pass-through certificates. The complaint alleged common-law fraud and deceit, common-law negligent misrepresentation, and violation of Kentucky's Blue Sky Law. It supported these claims through ten specific accusations:

> a. Defendants represented that the certificates were reasonably safe investment products backed by mortgage loans made according to reasonably prudent underwriting standards.
> b. Defendants omitted to state that prudent underwriting standards were not followed in making a substantial number of the mortgage loans that back the certificates.
> c. Defendants omitted to state that the loan originators' own underwriting standards were not followed in making a substantial number of the mortgage loans that back the certificates.
> d. Defendants omitted to state that a substantial number of the mortgage loans backing the certificates were made to borrowers whose creditworthiness did not support the amounts loaned to them or whose creditworthiness was not adequately examined or documented.
> e. Defendants omitted to state that a substantial number of the mortgage loans backing the certificates were not adequately secured due to inaccurate and unsound valuation of the real properties securing the mortgages or otherwise.
> f. Defendants omitted to state that the originators of the mortgage loans that back the certificates were engaging in predatory lending practices and were encouraged to make mortgage loans without adherence to prudent underwriting standards for the purpose of pooling and securitizing mortgage loans to generate sales of investment products like the certificates sold to Republic.
> g. Defendants omitted to state that the risk of default and resulting losses was unreasonably high for a substantial number of the mortgage loans that backed the certificates.
> h. Bear Stearns stated in the prospectuses or prospectus supplements that it intended to make a secondary market for the certificates. However, Bear Stearns lacked the ability to make a secondary market in the securities due to its own financial weakness. Bear Stearns omitted to state that its own financial weakness precluded it from making a secondary market in the securities.

> i. Bear Stearns stated in the prospectus supplement that the Class M certificates issued by ABFS Mortgage Loan Trust 2003-1 will be unconditionally and irrevocably guaranteed as to the timely distribution of interest and as to specified distributions of principal pursuant to the terms of a financial guaranty insurance policy to be issued by Radian Asset Assurance, Inc. However, the alleged credit enhancement provided by the insurance policy is illusory because of the poor quality of the underlying mortgage loans and because of Radian's heavy involvement in insuring collateralized debt obligations and asset-backed securities. Radian's financial strength ratings have been downgraded and it ceased writing new financial guaranty business.
> j. Bear Stearns stated in the prospectus supplements for [the certificates purchased in 2006] . . . that credit enhancement would be provided by subordination. However, the alleged credit enhancement provided by such subordination is illusory because of the poor quality of the underlying mortgage loans.

Republic also claimed that Bear Stearns "made the [same] misrepresentations and omissions . . . to the ratings agencies to obtain favorable ratings as a means of inducing persons to purchase the certificates." Although it did not read the prospectus supplements before purchasing the certificates, Republic asserted, without explanation, that it "acted with reasonable diligence in connection with its purchase of the certificates."

Bear Stearns moved to dismiss; the district court granted the motion in full, dismissing all claims with prejudice. It held that Republic's claims based on affirmative misrepresentations failed, either because the alleged misrepresentations were statements of opinion, not fact, or because the prospectus supplements expressly warned purchasers of the risks that caused Republic's loss. The district court similarly rejected Republic's claims for fraud by omission. It reasoned that some of the alleged omissions dealt with subjective, not factual, matters; that others were discussed in publicly available offering documents, and so could not have triggered reasonable reliance; that still others were not pleaded with sufficient particularity; and that all claims based on the 2003 purchase were time-barred. The district court also dismissed Republic's negligent-misrepresentation claim because there was no actionable affirmative misstatement of fact. Finally, the court rejected both of Republic's claims under Kentucky's Blue Sky Law. It held that

Republic's K.R.S. § 292.320 claim failed because Republic alleged no misrepresentation of fact, could not have reasonably relied on Barney's statements in light of the offering documents, sought to impose liability based on risks disclosed in the prospectus supplements, and, as to the 2003 purchases, was barred by the statute of limitations. Finally, the court dismissed Republic's claim under K.R.S. § 292.480(1). It held that allegations premised on reasonableness, prudence, and future intent did not address statements or omissions of fact; that allegations premised on statements in the offering documents could not support a claim because the documents played no role in the sale of a security; and that all claims based on the 2003 purchase were time-barred. Republic appeals.

## II

We review the grant of a motion to dismiss under Rule 12(b)(6) *de novo*, *La. Sch. Emps. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 477 (6th Cir. 2010), construing the record in the light most favorable to the non-moving party and accepting as true all well-pleaded allegations in the complaint. *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 845 (6th Cir. 2007). However, we need not adopt "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alterations omitted). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Because claims based on fraud pose "a high risk of abusive litigation," *Twombly*, 550 U.S. at 569 n.14, a party making such allegations "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). This rule requires a plaintiff: (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent. *Ind. State Dist. Council of Laborers and HOD Carriers*

*Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942–43 (6th Cir. 2009). Although "conditions of a person's mind may be alleged generally," FED. R. CIV. P. 9(b), the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation "plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks omitted).

This heightened standard unquestionably applies to Republic's fraud-and-deceit and Blue Sky Law claims. It is less clear whether Rule 9(b) also applies to Republic's common-law negligent-misrepresentation claim. *Compare CNH Am. LLC v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am.*, 645 F.3d 785, 794 (6th Cir. 2011) (explaining that "[s]o long as the[] [plaintiff's] allegations are 'plausible,'" a negligent-misrepresentation claim governed by Wisconsin law could survive under "the modest notice-pleading requirements of Civil Rule 8(a)."); *and Tricontinental Indus., Ltd. v. Pricewaterhouse-Coopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (holding that negligent misrepresentation claim was "*not* governed by the heightened pleading standard of Rule 9(b)"); *with Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) ("Under Minnesota law, any allegation of misrepresentation, whether labeled as a claim of fraudulent misrepresentation or negligent misrepresentation, is considered an allegation of fraud which must be pled with particularity."); *and Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("[A]s the claims sound in fraud and negligent misrepresentation, Appellants must plead the misrepresentations with particularity under Fed. Rule Civ. Proc. 9(b)."); *and N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009) (Boudin, J.) ("[O]ne might think that negligent misrepresentation and fiduciary duty were not on their face subject to Rule 9(b), but the case law here and in other circuits reads Rule 9(b) expansively to cover associated claims where the core allegations effectively charge fraud."). Whether a state-law claim sounds in fraud, and so triggers Rule 9(b)'s heightened standard, is a matter of substantive state law, on which we must defer to the state courts. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Rutherford v. Columbia Gas*, 575 F.3d 616, 621 (6th Cir. 2009) (Clay, J., concurring in part and dissenting in part).

The only Kentucky decision to address directly pleading requirements for negligent misrepresentation noted: "Like fraud, allegations of negligent misrepresentation must be pled with particularity." *Thomas v. Schneider*, No. 2009-CA-002132-MR, 2010 WL 3447662, at \*1 n.2 (Ky. Ct. App. Sept. 3, 2010). This quotation is somewhat sphinx-like, since it suggests that negligent misrepresentation is not a true allegation of fraud, but still holds parties pleading negligent misrepresentation to Kentucky's version of Rule 9(b).[2] Nevertheless, we believe that the *Thomas* court's reasoning was correct and that the Kentucky Supreme Court would reach the same result, if confronted with the issue. To plead negligent misrepresentation under Kentucky law, a plaintiff must allege, *inter alia*, that the defendant "supplie[d] false information for the guidance of others in [a] business transaction." *Presnell Constr. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 580 (Ky. 2004). This element, plainly understood, requires an allegation of duplicity. Such an allegation implicates Rule 9(b)'s "purpose[s] . . . to alert defendants as to the particulars of their alleged misconduct so that they may respond. . . . [T]o prevent fishing expeditions, to protect defendants' reputations from allegations of fraud, and to narrow potentially wide-ranging discovery to relevant matters." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (internal quotation marks and citations omitted). Accordingly, we believe that Republic's negligent-misrepresentation claims, like the rest of its allegations, must satisfy Rule 9(b)'s heightened pleading standard to survive dismissal.

## III

Republic's first claim, titled "Fraud and Deceit," comprises two distinct causes of action: fraud by misrepresentation and fraud by omission. We address each, in turn.

---

[2]The text of Kentucky Rule of Civil Procedure 9.02 is materially identical to the text of Rule 9(b). It reads: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." KY. R. CIV. P. 9.02; *compare* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

A

In Kentucky, fraud by misrepresentation comprises six elements: (1) the defendant must have made a material misrepresentation; (2) that was false; (3) that the defendant knew was false, or made with reckless disregard for its truth; (4) that was intended to induce the plaintiff to act, based on the misrepresentation; (5) that the plaintiff reasonably relied; and (6) that caused the plaintiff injury. *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009). To be actionable, a "misrepresentation . . . must relate to a past or present material fact. A mere statement of opinion or prediction may not be the basis of an action. This means . . . that forward-looking opinions about investment prospects or future sales performance . . . generally cannot be the basis for a fraud claim." *Ibid.* (internal quotation marks and citations omitted). Nor does "sales talk or puffing which is universal and an expected practice . . . amount to actionable misrepresentation. This is certainly true where the parties deal at arm's length and have equal means of information." *McHargue v. Fayette Coal & Feed Co.*, 283 S.W.2d 170, 172 (Ky. 1955) (internal quotation marks omitted).

Republic suggests that Barney committed fraud when he said that the certificates were reasonably safe investment products, which were based on reasonably prudent underwriting standards, Appellant's Br. at 18, and that Bear Stearns committed fraud when it "stated in the offering documents that it intended to make a secondary market for the certificates," *id.* at 20, and made illusory promises of credit enhancement, either through insurance or through subordination, in the offering documents. *Id.* at 21–22. None of these statements, as pleaded in Republic's complaint, suffice to allow the complaint to survive Appellees' motion to dismiss.

1

Barney's statement that the certificates were reasonably safe investment products, the district court held, was not actionable because "[w]hether something is reasonably safe is an inherently subjective question. . . . If [Barney] told Republic that the investment products were reasonably safe, [he] can only have been expressing [his] opinion."

This analysis is not wholly sound. In Kentucky, a misrepresentation is actionable if it "relate[s] to a past *or present* material fact." *Flegles*, 289 S.W.3d at 549 (emphasis added). Taken in the light most favorable to Republic, the complaint alleges that Barney told the Bank that the certificates offered some modicum of safety and rested on loans made according to some underwriting standards when, in reality, they were wholly unsafe investments, based on loans issued according to no underwriting standards at all. Such a lie, if proven, could sustain a claim for fraud.

We recognize that statements about investment products are often predictions about future performance. *See ibid.* ("[F]orward-looking opinions about investment prospects or future sales performance . . . generally cannot be the basis for a fraud claim."). But Barney's statement was not forward-looking. He did not suggest that the investment would provide future returns, nor did he predict any particular level of performance. Rather, he claimed that the investment, at the time of purchase, was reasonably safe. Of course, such a representation is forward-looking to some extent, since the safety of the security ultimately hinges on the future performance of an aggregation of individual loans. Barney's statement, however, could also refer (and at this stage, we must construe it to refer) to the security's structural qualities at the time of sale. The procedures used to underwrite the loans and the decisions made in forming the trusts, for instance, are past or present facts about the certificates, much like the materials used in construction are past or present facts about a new home. Perhaps a homeowner whose house crumbled one year after purchase could not maintain an action against a builder who predicted that the home would last for a reasonably long time. But surely, he could sue the builder for claiming that the foundation was made of reasonably good cement when, in reality, it was made of sand. Likewise, understood as a reference to the certificates' structural qualities at the time of purchase, Barney's alleged misstatement concerns a present material fact about the securities' foundations. It is neither opinion, nor forward-looking prediction.

Furthermore, even if Barney's statement were an opinion or prediction, and thus generally non-actionable, it could still be the basis for Republic's claim under one of

Kentucky's "deception exceptions." *Ibid.* Fraud claims based on opinions or predictions may lie "where the opinion [or prediction] *either* [1] incorporates falsified past or present facts *or* [2] is so contrary to the true current state of affairs that . . . [it] is an obvious sham." *Ibid.* (emphasis added). This statement describes two distinct exceptions. The first is relatively broad. It prevents fraudfeasors from lying about past or present facts, but shielding themselves from liability by using statements of opinion or prediction. The latter is narrower, implicating only the present, and involving an improbable description of the whole current state of affairs.

Neither of "these narrow exceptions . . . [however] relieve[s] market participants, particularly experienced participants . . ., of their duty to protect themselves." *Ibid.* "In short, the law imposes upon recipients of business representations a duty to exercise common sense." *Ibid.* In light of this requirement, it is unlikely that a sophisticated institutional investor could ever be the victim of fraud based on opinion under the second branch of the exception. Such investors are, by nature, well informed. If an opinion were "an obvious sham," *ibid.*, a sophisticated party, exercising reasonable diligence, would discredit it. Here, for instance, Republic could not maintain a claim under the obvious-sham exception because, as a sophisticated institutional investor spending tens of millions of dollars, it had an obligation to protect itself, at least by reading the prospectus supplements, which contained descriptions of the risks involved in investing.[3] Under the falsified-facts exception, however, even a savvy investor could be defrauded by a statement of opinion. Institutional investors, while sophisticated, are not omniscient. Were a fraudfeasor to offer an opinion based on a lie about a fact that only it knew, even the most prudent, well-informed investor would have a valid fraud claim.

Taken in the light most favorable to Republic, the representation "that the certificates were reasonably safe investment products backed by mortgage loans made according to reasonably prudent underwriting standards" incorporated false facts—that the investments offered some modicum of safety, when, in fact, they did not; and that the

---

[3]Prospectus supplements were available for all of the certificates purchased in 2006 before purchase.

underwriting standards used were reasonable when, in fact, the originators eschewed all underwriting standards and issued objectively imprudent loans.  Put simply, Republic alleges that these were not merely risky loans, but loans from another universe.  Republic's first allegation, then, could sustain a fraud-by-misrepresentation claim, even if it were a statement of opinion. *Plumbers' Union v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 773 (1st Cir. 2011) (Boudin, J.) ("Plaintiffs' allegation of wholesale abandonment [of underwriting standards] may not be proved, but—if accepted at this stage—it is enough to defeat dismissal.").

Even so, Appellees might respond, Barney's statement was "sales talk or puffing which is universal and an expected practice . . . [and does not] amount to actionable misrepresentation," *McHargue*, 283 S.W.2d at 172, particularly because Republic failed to read the offering documents. *See Flegles*, 289 S.W.3d at 549 ("[M]arket participants, particularly experienced participants . . . [have a] duty to protect themselves.").  Thus, even if Barney's statement did incorporate a false fact, it still could not be the basis for a claim of fraud.

It does not appear that Kentucky courts have decided whether the deception exceptions apply to sales talk or puffery under today's fraud standards.  Because the issue is one of state law, our task is to predict how the Kentucky Supreme Court would rule, if it faced the question. *See Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001).[4]

The terms "puffing" and "puffery" first appear in Kentucky law in the context of auctions. *See Millar v. Campbell*, 3 A.K. Marsh. 526, 1821 WL 1160, at *1 (Ky. 1821).  A seller would hire "puffers . . . to bid on [his] account," driving up the price of the property being sold. *Ibid.*; *see also Robinson v. Robinson's Tr.*, 11 Bush 174, 1875 WL 11469, at *1 (Ky. 1874).  By the early 1900s, however, puffery had taken on the meaning it has today. *Vokes v. Eaton*, 85 S.W. 174, 177 (Ky. 1905); *see also J.I. Case*

---

[4]Until 1976, the highest court in Kentucky was the Kentucky Court of Appeals.  We therefore look to pre-1976 Kentucky Court of Appeals decisions, when necessary, as the relevant state-court precedent.

*Threshing Mach. Co. v. Mattingly*, 134 S.W. 1131, 1133 (Ky. 1911) ("When agents cease to puff their wares, they will cease to be employed."). "Puffing by sellers," these early cases held, "is universal" and thus generally cannot sustain a fraud claim. *Vokes*, 85 S.W. at 177.

This rule, however, was qualified. It did not make sellers wholly immune from liability for misrepresentations. Rather, because salespeople necessarily express a high opinion of their products, "every one buys knowing that he must exercise his own judgment *on matters of opinion expressed by the seller*." *Vokes*, 85 S.W. at 177 (emphasis added). Fraud, though, could still lie against a seller who made knowing misrepresentations of fact while puffing his product. *Ibid.* ("The plaintiff does not charge that the defendants misrepresented any fact to him. Their entire scheme was set out in the bonds which he bought and accepted. It is not charged that there was any misrepresentation as to the terms of the bonds, or that he was misled in any way as to the contract.").

Later panels refined this suggestion by applying to puffery the "well-settled rule [of contract law] that . . . false representation, by the seller of property as to its value, when the purchaser has *an opportunity to ascertain for himself such value by ordinary vigilance or inquiry*, has no legal effect . . . even when made with the intention to deceive." *McCoun v. Nickell*, 270 S.W. 457, 457 (Ky. 1925) (emphasis added) (citing *German Nat'l Bank's Receiver v. Nagel*, 82 S.W. 433, 435 (Ky. 1904)). The result of this synthesis was *McHargue*, which held: "'sales talk' or 'puffing' . . . do[es] not amount to actionable misrepresentation. This is certainly true where the parties deal at arm's length and have equal means of information." *McHargue*, 283 S.W.2d at 172.

Sellers' claims about their products, then, are not wholly immune from scrutiny under Kentucky fraud law. Like all statements of opinion, these representations are actionable only if they misstate facts. The difference is one of degree. Kentucky law presumes that a buyer expects a salesperson to "puff [his] wares." *Mattingly*, 134 S.W. at 1133. The buyer, therefore, should be on his guard and verify the seller's statements before purchase. The "duty to exercise common sense," *Flegles*, 289 S.W.3d at 549, in

other words, is heightened in the commercial context.  This does not mean, however, that salespeople have *carte blanche* to commit fraud.  Venerable Kentucky decisions holding that opinions incorporating false facts may constitute fraud, while opinions based on true facts may not, confirm this conclusion.

*Bowman v. Bates*, an 1810 decision concerning misrepresentations of fact made while negotiating a sale of land, held: "a mistake of opinion . . . could be no ground for relief between parties able to contract. . . . [Y]et, it is believed, [Courts] ought to exact a fair representation of premises material in forming an opinion, in order that the party might possess the means of exercising his own powers of calculation."  2 Bibb 47, 1810 WL 634, at *4 (Ky. 1810).  It reasoned that a contrary conclusion would:

> become pernicious in practice, by bringing the dishonesty and cunning of some to operate upon the honest credulity of others. And to permit fraud to elude the vigilance of chancery, by cunning, . . .  seems too repugnant to the administration of justice, the protection of right, and the suppression of wrong.

*Id.* at *5.  Thirty-four years later, Kentucky applied this rule to sales of goods, holding:

> A vendor who gives an opinion honestly, of the soundness of an article, is not liable to the charge of fraud, but if the affirmation be of a fact, . . . and made without reserve, qualification, or reference to the means of his knowledge, it will not be understood as mere judgment or opinion.

*Thomas v. McCann*, 4 B. Mon. 601, 1844 WL 3519, at *1 (Ky. 1844).  Kentucky courts continued to apply this rule throughout the nineteenth and twentieth centuries in all contexts. *See, e.g.*, *Ades v. Wash*, 251 S.W. 970, 973 (Ky. 1923) (holding that, to recover for misstatement of business's value, plaintiff had to show that defendant "knowingly made a false statement of the . . . [value] as a matter of fact and not of opinion"); *Ky. Elec. Dev. Co.'s Receiver v. Head*, 68 S.W.2d 1 (Ky. 1934) (holding that gross misrepresentation to seventy-year-old woman about company's future prospects in course of selling securities could support liability); *Flegles*, 289 S.W.3d at 549 (noting that, if purported statement of opinion "incorporates falsified past or present facts," it can give rise to claim of fraud).  We follow suit and predict that the Kentucky Supreme Court would apply the deception exceptions to puffery.

Whether Republic qualifies for the falsified-fact exemption in the puffery context is a close question.[5] In light of the standards that apply at this stage, however, we believe that it does. As discussed above, the representation "that the certificates were reasonably safe investment products backed by mortgage loans made according to reasonably prudent underwriting standards" incorporated false facts—that the investments offered some modicum of safety, when they offered none, and that the underwriting standards were reasonable, when, in fact, the originators eschewed underwriting standards altogether. But this alone is not enough in the context of puffery, where "every one buys knowing that he must exercise his own judgment." *Vokes*, 85 S.W. at 177. To maintain its claim, puffery notwithstanding, Republic must also show that it could not have protected itself from Appellees' alleged misrepresentations because it did not "have equal means of information." *McHargue*, 283 S.W.2d at 172.

The complaint, construed in Republic's favor, makes such a showing. Bear Stearns underwrote all of the securities in this case. It, therefore, had intimate knowledge about the inner workings of the certificates. It is true that Republic did not read the relevant offering documents. But even if it had, Republic simply lacked "equal means of information," *ibid.*, which would have allowed it to discover the extent to which the originators allegedly departed from any acceptable underwriting standards. It could not, in short, have learned that Barney's claims about the safety of the securities and the originators' reasonable underwriting standards were utterly false, without exceptional hardship. In this situation, it may retain the benefit of the "falsified fact" exception, even if Barney's statement was puffery.

Barney's alleged misstatement, therefore, could be actionable in this case as a matter of theory, both because it is a misstatement of present fact, concerning the structural integrity of the securities, and because—if it is an opinion—it falls within the "deception exception[]" for opinions "incorporat[ing] falsified past or present facts." *Flegles*, 289 S.W.3d at 549.

---

[5]As discussed above, Republic cannot qualify for the obvious-sham exception because, if Barney's alleged representation were so outrageous that it was an obvious sham, Republic, as a sophisticated institutional investor, should not have relied on it.

Still, the fraud claim based on Barney's alleged misstatement must fail because Republic did not plead it with sufficient particularity under Rule 9(b). As we observed earlier, a plaintiff who makes a fraud claim "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Specifically, the plaintiff must: (1) point to a particular allegedly fraudulent statement; (2) identify who made the statement; (3) plead when and where the statement was made; and (4) explain what made the statement fraudulent. *Omnicare*, 583 F.3d at 942–43. Republic does no such thing. Nowhere does it indicate when, where, or to whom the alleged misstatement was made. This defect is fatal. The claim may not proceed because Republic's complaint does not pass muster under Rule 9(b). *Ibid.*

2

Republic next alleges that it suffered fraud by misrepresentation because "Bear Stearns stated in the prospectuses or prospectus supplements that it intended to make a secondary market for the certificates," but in fact was not able to do so because of its financial weakness. This argument fails for two reasons. First, such a statement of intent would only be actionable if it were "outlandish," such that Bear Stearns knew that what it promised would never happen when it made the statement. *Flegles*, 289 S.W.3d at 549. Republic has pleaded no facts—aside from news accounts concerning the general weakness of the economy—indicating that Bear Stearns knew that it would not be able to create a secondary market in the securities that Republic purchased, at the time of sale. Second, even if Bear Stearns's statement of intent were a knowing misrepresentation, Republic could not have relied on it reasonably, in light of the prospectus supplements. Each prospectus supplement warns that, while Bear Stearns intended to create a secondary market in the certificates, it was under no obligation to do so and such a market might never develop. Republic cannot have been defrauded by a statement so qualified in the very document that allegedly perpetrated the fraud.

Republic, nevertheless, urges that this conclusion is erroneous. It correctly notes that "[o]ne commits fraud by making representations as to his future intentions when he knows at the time the representations were made that he did not intend to carry them out . . . [and when the opinion] is so contrary to the true current state of affairs that it is a sham." Appellant's Br. at 20 (internal citations omitted). It reasons that "Bear Stearns was aware of its own financial

weakness and either knew or should have known . . . that it could not make a secondary market in the certificates," and that "the offering documents are materially misleading in stating an intention to make a secondary market without mention of Bear Stearns' financial weakness." *Id.* at 20–21.

This argument is unavailing for three reasons. First, Republic completely ignores the express language of the offering documents. Each document contains materially similar language explaining that Bear Stearns was not obligated to create a secondary market, that it could not assure that a secondary market in the certificates would develop, and that, if such a market did develop, Bear Stearns would not necessarily be able to provide liquidity to certificate holders. *See, e.g.*, Bear Stearns ARM Trust 2006-2 Prospectus Supplement at S-16 ("[T]he underwriter will not be obligated to [create a secondary market]. There can be no assurance that a secondary market for the offered certificates will develop or, if it does develop, that it will provide holders of the offered certificates with liquidity of investment or that it will continue for the life of the offered certificates."). Second, Republic's response hinges on omission, not express misstatement. Fraud by omission is a distinct tort with distinct elements under Kentucky law. Finally, even if Republic could sustain its claim by showing that Bear Stearns was aware of its own financial weakness, and thus materially misled Republic, its claim in this instance would still fail because it does not plead enough factual matter to raise its allegations about Bear Stearns's knowledge of its own precarious financial position above mere speculation. Such allegations are not sufficient, even under Rule 9(b)'s more lenient standard for allegations of mental state. *See* FED. R. CIV. P. 9(b); *Iqbal*, 129 S. Ct. at 1949 (explaining facial plausibility standard). Republic's second allegation of fraud by misrepresentation fails.

3

Republic's last fraud-by-misrepresentation allegation is that the offering documents' promises of credit enhancement and timely distribution of principal and interest, which were

protected either by insurance policies or by subordination rights,[6] were "illusory [and therefore fraudulent] because of the poor quality of the underlying mortgage loans." Like its secondary-market allegation, this allegation fails because language in the offering documents warned Republic—or would have warned Republic, had it read the documents—of the very risk at issue, namely that the "Credit Enhancement Is Limited; [and] the Failure of [the] Credit Enhancement to Cover Losses on the Trust Fund Assets May Result in Losses Allocated to the Offered Certificates."

Republic resists this conclusion by arguing that, "because the offering documents do not disclose the financial weakness of [the insurer] and the poor quality of the underlying mortgage loans, the representations [concerning credit enhancement] . . . are materially misleading, notwithstanding the qualifying language." Appellant's Br. at 23. First, this argument implicates fraud by omission, not fraud by misrepresentation. But more fundamentally, the weakness of the guarantees offered does not change the fact that the prospectus supplements expressly disclaimed the very risk that Republic claims constitutes fraud. Republic's final allegation of fraud by misrepresentation fails.

B

"Fraud by omission is not the same, at law, as fraud by misrepresentation, and has substantially different elements." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct. App. 2003). Unlike fraud by misrepresentation, which hinges on an affirmative misstatement, "a fraud by omission claim is grounded in a duty to disclose." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011). To prevail on such a claim, a plaintiff must prove: "(1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence." *Ibid.* Kentucky courts have long held that "mere silence does not constitute fraud where it relates to facts open to common observation or discoverable by the exercise of

---

[6] In this context, subordination refers to the order of payment. Protection through subordination means that the holder of a protected, or senior, certificate receives payment from the loan pool before the holder of an unprotected, or junior, certificate.

ordinary diligence." *Waldridge v. Homeservices of Ky., Inc.*, No. 2010–CA–000264–MR, ----
S.W.3d ----, 2011 WL 1598738, at \*4 (Ky. Ct. App. April 29, 2011) (quoting *Bryant v.
Troutman*, 287 S.W.2d 918, 920–21 (Ky. 1956)).  If a party might have learned the truth "by
ordinary vigilance and attention, it is the party's own folly if he neglected to do so, and he is
remediless." *Mayo Arcade Corp. v. Bonded Floors Co.*, 41 S.W.2d 1104, 1109 (Ky. 1931).

Republic alleges that Appellees committed fraud by omission because they: (1) failed
"to state that prudent underwriting standards were not followed in making a substantial
number of the mortgage loans that back the certificates," Appellant's Br. at 23; (2) "omitted
to state that the loan originators' own underwriting standards were not followed in making a
substantial number of the mortgage loans that back the certificates," *id.* at 30; (3) did not
inform Republic that they issued loans to borrowers whose credit histories were either
undocumented or insufficient to support the amount of the loan; (4) "omitted to state that a
substantial number of the mortgage loans backing the certificates were not adequately secured
due to inaccurate and unsound valuation of the real properties securing the mortgages or
otherwise," *id.* at 35; (5) did not reveal that originators participated in predatory lending
practices, *id.* at 38; and (6) did not "state that the risk of default and resulting losses was
unreasonably high for a substantial number of the mortgage loans that backed the certificates."
*Id.* at 41.   None of these allegations is sufficient to sustain Republic's fraud-by-omission
claim.

1

The district court dismissed Republic's claim that Appellees failed to disclose that
"prudent underwriting standards were not followed" because prudence was a matter of
opinion, not fact.  As discussed above, this analysis misses the mark.  Republic's allegations
involving reasonableness do not deal in shades of gray.  Rather, Republic alleges that
Appellees' underwriting standards were minimal at best, at worst, nonexistent.  Just as the
homebuilder mentioned above would have an obligation to disclose that the house he built sat
on pillars of sand, so would Bear Stearns have been required to disclose that its underwriting
standards were not, in reality, standards at all.  *See Nomura*, 632 F.3d at 773 ("Plaintiffs'

allegation of wholesale abandonment [of underwriting standards] may not be proved, but—if accepted at this stage—it is enough to defeat dismissal.").

Republic, however, offers so little information about the underwriting standards that we cannot allow its claim to proceed.  Rule 9(b) is designed, not only to put defendants on notice of alleged misconduct, but also "to prevent fishing expeditions . . . and to narrow potentially wide-ranging discovery to relevant matters."  *Chesbrough*, 655 F.3d at 466 (internal quotation marks and citations omitted).  To maintain its fraud-by-omission claim under this standard, Republic must specify "the who, what, when, where, and how" of the alleged omission. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) (internal quotation marks omitted).  Specifically, it must plead: (1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what Appellees obtained as a consequence of the alleged fraud. *See Sanderson v. HCA—The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (discussing pleading standard for fraud by omission in *qui tam* context).

Republic argues that media reports lead to a reasonable inference that Bear Stearns generally engaged in "dishonest underwriting practices" and issued "fraudulent loans." Appellant's Br. at 26.  This is not enough.  Republic's complaint discussed the originators' allegedly wrongful practices only at a high level of generality. *See, e.g.*, Compl. at 9–10 ("The problems reported have included, without limitation, loans originated by fraud and loans underwritten without regard to prudent and fundamental standards of mortgage lending. . . . [T]he Center for Responsible Lending states that it uncovered substantial evidence that IndyMac engaged in unsound and abusive lending during the mortgage boom, routinely making loans without regard to borrowers' ability to repay.").  It made no effort to explain why the loans issued were fraudulent, how they differed from established lending standards, or what abusive acts originators performed.  Further, it made no effort to link its already-too-general allegations to the loans underlying the certificates, aside from commenting: "The loan originators mentioned in these reports . . . have included the originators of the mortgage loans that backed the certificates purchased by Republic."  Republic's vague allegations simply do not suffice under Rule 9(b).

Nor does the First Circuit's decision in *Nomura* counsel a contrary conclusion. *Nomura*, like this case, was a suit by a large institutional investor, alleging that an investment company made material misstatements and omissions in connection with the sale of mortgage-backed securities. *Nomura*, 632 F.3d at 766. Unlike Republic, however, the *Nomura* plaintiffs made the "fairly specific" allegation that one of the loan issuers perpetrated fraud by "scrubbing loan applications of potentially disqualifying material . . . [as part of a] business model, aimed at milling applications at high speed to generate profits from the sale of such risky loans to others." *Id.* at 772–73 (internal quotation marks and alterations omitted). Even so, under the comparatively lenient Rule 8(a) standard,[7] the court held that it had to make "a judgment call" in determining whether the claims would go forward. *Id.* at 773. Here, where Republic made more general allegations, and must satisfy the stricter Rule 9(b) standard, the question is not close. Republic's claim that Appellees failed to disclose that "prudent underwriting standards were not followed" fails.

2

Republic next alleges that Appellees omitted to state, first, that the loan originators did not follow their own underwriting standards in making a substantial number of the mortgage loans that back the certificates, and, second, that a substantial number of the mortgage loans backing the certificates were inadequately secured because of inaccurate property valuations. Neither of these claims meets Rule 9(b)'s pleading threshold.

First, Republic does not connect the underwriters' alleged failure to follow their underwriting standards to the loans and securities involved in this case. Instead, it argues that "the Complaint's factual content supports the reasonable inference that the loan originators did not follow their own underwriting standards in making a substantial number of the mortgage

---

[7]The court apparently applied the Rule 8(a) standard because Nomura did not seek dismissal under Rule 9(b). In the context of claims under sections 11 and 12(a)(2) of the Securities Act, courts may make a "preliminary inquiry into the nature of the plaintiff's allegations . . . [to determine whether] the claims are premised on allegations of fraud." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010) (internal quotation marks omitted). If the underlying claims sound in fraud, Rule 9(b) applies; if not, the familiar Rule 8(a) standard governs. Defendants, in this framework, must expressly argue that the claims sound in fraud, and so are governed by Rule 9(b). *See ibid.* ("Defendants have not argued that the pleadings in these cases are subject to Rule 9(b). Therefore, notice pleading supported by facially plausible factual allegations is all that is required . . . ."). We express no opinion on the question whether a court could apply Rule 9(b) *sua sponte*, as it is not necessary to the resolution of this case.

loans that back the certificates." Appellant's Br. at 33.   This allegation deals only in probabilities.  Rule 9(b) requires more.  To survive Appellees' motion to dismiss, Republic would have to plead at least some facts connecting the loans at issue in this case to the underwriting practices it extensively documents.  Failure to do so vitiates its claims.  This is especially so in light of the offering documents, which  provide that originators would make exceptions to their underwriting standards.  *See, e.g.*, Bear Stearns ARM Trust 2006-4 Prospectus Supplement at S-51 ("The underwriting standards described above are guidelines of general applicability.  On a case-by-case basis, it may be determined that an applicant warrants an exception to these guidelines.").  To maintain its claim, then, Republic would either have to show that originators failed to abide by the terms of the exceptions disclosed, or that, in reality, they used no standards at all.  Nothing in Republic's complaint approaches such a showing; its allegation that originators did not follow their own guidelines fails.

Similarly, Republic's allegation that Appellees failed to inform it of loan originators' unsound valuation practices is insufficient under Rule 9(b).  According to Republic, "the industry-wide existence of questionable appraisal practices [drawn from media reports] makes it *more probable* that such practices were followed with loans included in the trusts." Appellant's Br. at 36 (emphasis added).  Again, this argument involves only probabilities; again Republic's probabilistic reasoning fails under Rule 9(b)'s heightened pleading standard. A contrary holding, the First Circuit has noted, "could subject a multiplicity of defendants to the most unrestrained of fishing expeditions." *Nomura*, 632 F.3d at 774 (internal quotation marks omitted) (considering materially identical claim).  Without some factual allegation suggesting that appraisers of the properties at issue here employed unsound valuation practices in connection with these loans, Republic's unsound-valuation claims must fail.[8]

---

[8]We do not mean to imply that, to survive a motion to dismiss, a plaintiff must pick apart mortgage-backed securities loan by loan.  Still, a plaintiff must create some connection, sufficient at least to allow a defendant effectively to defend, between general social conditions and the specific practices or defendants that allegedly caused harm to this plaintiff.  *See Chesbrough*, 655 F.3d at 466 (discussing policy rationales of Rule 9(b)).

3

We address together Republic's last three fraud-by-omission claims: (1) that Appellees failed to disclose that the trusts contained loans issued to borrowers whose credit histories were either undocumented or insufficient to support the amount of the loan; (2) that Appellees failed to disclose that originators utilized predatory lending practices; and (3) that Appellees failed to disclose that the risk of default and resulting losses was unreasonably high for a substantial number of the mortgage loans that backed the certificates. Because the resolution of these claims hinges, in large part, on disclosures made in the offering documents, they are best analyzed by focusing first on the 2006 purchase, then moving to the 2003 purchase.

When Republic bought its second batch of mortgage-backed securities in 2006, prospectus supplements were available for all of the issuing trusts. Republic, a sophisticated institutional investor, had a duty to read these documents, in the "exercise of ordinary diligence." *Waldridge*, 2011 WL 1598738, at \*4; *see also Flegles*, 289 S.W.3d at 549. Because it could have learned the truth about statements in the offering documents "by ordinary vigilance and attention, it is [Republic's] own folly if [it] neglected to do so, and [Republic] is remediless." *Mayo Arcade*, 41 S.W.2d at 1109.

The 2006 offering documents expressly warned prospective investors about each alleged non-disclosure. First, the documents explained that some of the loans in the trust were non-conforming loans, meaning that they were "ineligible for purchase by Fannie Mae or Freddie Mac due either to credit characteristics of the related mortgagor or documentation standards in connection with the underwriting of the related mortgage loan." "These credit characteristics include mortgagors whose creditworthiness and repayment ability do not satisfy such Fannie Mae or Freddie Mac underwriting guidelines." In light of these disclosures (which Republic did not read), Republic cannot maintain a fraud-by-omission claim. Had it read the disclosures, it would have known that the trusts contained loans issued to borrowers with questionable credit histories. This fact, which Appellees disclosed, cannot sustain Republic's fraud-by-omission claim. *Giddings & Lewis*, 348 S.W.3d at 747 (noting that failure to disclose is an element of fraud-by-omission).

Likewise, the offering documents discussed at length the possibility that "VIOLATION OF VARIOUS FEDERAL, STATE AND LOCAL LAWS MAY RESULT IN LOSSES ON THE MORTGAGE LOANS." (capitalization in original). The documents continued: "a court may determine that a mortgage loan [is predatory] . . . in which case the seller will be required to purchase that mortgage loan from the trust." Republic suggests that such "statements are truisms rather than disclosures of the kinds of predatory lending practices engaged in by originators that supplied the mortgage loans." Appellant's Br. at 40. Were Republic a country bumpkin, not a financial institution, this argument might be colorable. However, a large institutional investor, in its exercise of "common sense," *Flegles*, 289 S.W.3d at 549, should understand that when an offering document refers to courts determining that loans are predatory, then lays out a specific remedial procedure for such loans, some of the lending practices at issue might be predatory. Had Republic read the offering documents, it would have reached this conclusion. Thus, because Appellees disclosed the possibility of predatory lending practices, Republic's fraud-by-omission claim based on those practices must fail. *Giddings & Lewis*, 348 S.W.3d at 747.

Finally, the offering documents amply warned that the loans underlying the certificates carried a high risk of default. One prospectus supplement, for instance, read:

> mortgage loans underwritten under the related originator's non-conforming credit underwriting standards are likely to experience rates of delinquency, foreclosure and loss that are higher, and may be substantially higher, than mortgage loans originated in accordance with the Fannie Mae and Freddie Mac underwriting guidelines. Any resulting losses, to the extent not covered by credit enhancement, may affect the yield to maturity of the related offered certificates.

Another warned:

> the current level of delinquencies, foreclosures and losses may not be representative of the levels that may be experienced over the lives of such mortgage loans. . . . Accordingly, the information presented in the tables below . . . should not be considered as a basis for assessing the likelihood, amount or severity of delinquency or losses on the Mortgage Loans, and no assurances can be given that the foreclosure, delinquency and loss experience presented in these tables will be indicative of such experience on the Mortgage Loans in the future.

A third cautioned:

> If the residential real estate market should experience an overall decline in property values so that the outstanding balances of the mortgage loans, and any secondary financing on the mortgaged properties, in the mortgage pool become equal to or greater than the value of the mortgaged properties, the actual rates of delinquencies, foreclosures and losses could be higher than those now generally experienced in the mortgage lending industry.

Republic would have understood that the loans underlying the certificates carried a high risk of default, had it read the prospectus supplements. Its failure to do so vitiates its fraud-by-omission claim. *Giddings & Lewis*, 348 S.W.3d at 747; *Mayo Arcade*, 41 S.W.2d at 1109 (noting that, if a party might have learned the truth "by ordinary vigilance and attention, it is the party's own folly if he neglected to do so, and he is remediless").

The prospectus supplement for the 2003 certificates, however, was not available on the date of purchase and Barney did not provide an advance copy. Thus, Republic could not have used the prospectus supplement for that offering to inform itself of Appellees' alleged omissions before purchase. Still, Bear Stearns filed the prospectus supplement for the 2003 certificates on March 31, 2003. Republic filed suit on March 20, 2009. In Kentucky, fraud actions are subject to a five-year limitations period, which begins to run when a plaintiff could have discovered the fraud in the exercise of reasonable diligence. K.R.S. §§ 413.120(12), 412.130(3). Even allowing Republic months to read the 2003 prospectus supplement, which reading was certainly required in the exercise of "ordinary vigilance and attention," *Mayo Arcade*, 41 S.W.2d at 1109, Republic should have become aware of Appellees' alleged omissions long before March 20, 2004, five years before it filed the instant suit. As such, Republic's claims based on the 2003 certificates are all time-barred.[9]

---

[9] Republic argues that its claims are not time-barred because the prospectus supplement eventually published was materially misleading. This argument is not tenable, for the prospectus supplement discloses the risks at issue. *See* ABFS Mortgage Loan Trust 2003-1 Prospectus Supplement at S-7 (warning that originators generally used lax underwriting standards), S-17–S-18 (discussing predatory lending laws, noting: "Violations of certain provisions of these federal and state laws may limit the ability of the servicer to collect all or part of the principal of, or interest on, the mortgage loans."), S-7 ("As a result of this less stringent approach to underwriting, the mortgage loans purchased by the trust may experience higher rates of delinquencies, defaults, foreclosures and losses than mortgage loans underwritten in a manner, which is more similar to the Fannie Mae and Freddie Mac guidelines.").

C

Republic's complaint also claims that Appellees made the same misrepresentations and omissions to ratings agencies "to obtain favorable ratings as a means of inducing persons to purchase the certificates." This claim is untenable. First, none of Republic's allegations can sustain a claim of fraud, as discussed above. But even if one or more of Republic's allegations were colorable, Republic pleads no connection between the alleged misstatements and omissions, and the ratings agencies. Such a "naked assertion[] devoid of further factual enhancement" does not state a claim under Rule 8(a), much less under the heightened standard of Rule 9(b). *Iqbal*, 129 S. Ct. at 1949.

IV

Republic's second count alleges negligent misrepresentation. Under Kentucky law:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Giddings & Lewis*, 348 S.W.3d at 744–45 (internal quotation marks omitted). "[A] prima facie case . . . [of] negligent misrepresentation requires [that a plaintiff plead] an affirmative false statement." *Id.* at 746. Mere omissions will not do.

Four of Republic's ten allegations involve direct misstatements, rather than omissions.[10] None supports a claim for negligent misrepresentation. First, Republic avers: "Defendants represented that the certificates were reasonably safe investment products backed by mortgage loans made according to reasonably prudent underwriting standards." This allegation, however, fails because Republic offers no additional information about Appellees'

---

[10]Republic suggests that the omissions it alleges are actionable as negligent misrepresentations because they "are closely related to the false information that defendants did supply: the omitted information was required in order to make the statements made not misleading." Appellant's Br. at 44. Directly applicable Kentucky Supreme Court precedent discredits this argument. *See Giddings & Lewis*, 348 S.W.3d at 746 ("[A] prima facie case . . . [of] negligent misrepresentation requires [plaintiffs to plead] an affirmative false statement.").

supposed representation.   Under Rule 9(b), Republic was required to allege specific facts suggesting who made the representation it complains of, when the representation was made and to whom, what made the representation misleading, and how Appellees profited from the representation. *Omnicare*, 583 F.3d at 942–43.  Republic offers no such facts; its claim cannot go forward.

Next, Republic avers: "Bear Stearns stated in the . . . prospectus supplements that it intended to make a secondary market for the certificates."  This statement, however, could not give rise to a claim of negligent misrepresentation because the offering documents disclosed that, while Bear Stearns intended to create a secondary market in the certificates, it was under no obligation to do so and such a market might never develop.  Republic, as we said above, cannot have been defrauded by a statement so qualified in the very document that allegedly perpetrated the fraud.

Republic's remaining negligent-misrepresentation claims hinge on promises of credit enhancement made in the prospectus supplements.  As discussed above, however, these alleged misstatements are not misstatements at all: the prospectus supplements expressly warn of the very diminution in value at issue.  As such, Republic cannot maintain its negligent-misrepresentation claim on any of the grounds alleged in its complaint.

V

Republic's final claim is that Appellees violated two sections of Kentucky's Blue Sky Law, K.R.S. §§ 292.320 and 292.480.  Violation of the former, standing alone, cannot give rise to a private cause of action.  "[W]here a statute both declares the unlawful act and specifies the civil remedy available, the aggrieved party is limited to the remedy provided by the statute." *Foster v. Ky. Farm Bureau Mut. Ins. Co.*, 189 S.W.3d 553, 557 (Ky. 2006).  Here, § 292.320 states the elements that constitute a violation of the Blue Sky Law, and § 292.480 specifies the remedies available against "[a]ny person, who offers or sells a security in violation of this chapter."  K.R.S. § 292.480(1).  Accordingly, Republic may recover under § 292.480(1) if it pleads a violation of § 292.320.  It may also make out a claim under § 292.480(1) directly.

A

Section 292.320 of the Blue Sky Law is "virtually identical" to federal Rule 10b-5. *Brown v. Earthboard Sports U.S.A., Inc.*, 481 F.3d 901, 917 (6th Cir. 2007). Accordingly, this court has held that the elements of a § 292.320 claim are the same as the elements of a Rule 10b-5 claim: "(1) a material misrepresentation or omission; (2) *scienter*; (3) a connection with the purchase or sale of a security; (4) reliance (or transaction causation); (5) economic loss; and (6) loss causation." *Ibid.* The heightened pleading standard that Congress imposed on securities-fraud actions in the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4, applies to § 292.320 claims. *Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 471 (6th Cir. 2011).

Republic cannot establish all of these elements for any of its specific allegations. First, Republic's claims based on alleged misrepresentations and omissions concerning the securities' safety and the underwriting standards used fail because they are not pleaded with particularity sufficient to satisfy Rule 9(b) and the PSLRA. Nor can Republic establish that it relied on statements concerning borrowers' creditworthiness, predatory lending, property valuation, and deviant underwriting practices because the offering documents disclosed those risks. Similarly, Republic cannot maintain its claims based on allegedly illusory credit enhancement because it never claims that Appellees promised credit enhancement "in connection with the offer, sale, or purchase of any security." K.R.S. § 292.320(1). Finally, Republic's allegations concerning the 2003 certificates plainly fail because "[n]o person may sue under [the Blue Sky Law] more than three (3) years after the date the occurrence of the act, omission, or transaction constituting a violation of this chapter was discovered, or in the exercise of reasonable care should have been discovered." K.R.S. § 292.480(5).

B

K.R.S. § 292.480(1) is analogous to 15 U.S.C. § 77*l*(a)(2). *Ashland*, 648 F.3d at 471. It requires proof of three elements: (1) offer or sale of a security; (2) by means of an untrue statement or omission concerning a material fact; (3) that the seller knew or should have known was untrue or misleading. K.R.S. § 292.480(1). As previously discussed, Republic's claims based on alleged misrepresentations and omissions concerning the securities' safety and

the underwriting standards used fail because they are not pleaded with particularity sufficient to satisfy Rule 9(b) and the PSLRA.  Claims that rely on statements in the offering documents similarly founder because Republic did not read those documents before purchasing the securities.  These statements simply could not have had anything to do with the offer or sale of a security.  K.R.S. § 292.480(1).  At most, they affected Republic's decision to hold the certificates—a decision for which the statute, by its terms, imposes no liability.  But even if allegations based on statements in the offering documents could give rise to a cause of action under § 292.480(1), despite Republic's failure to read the prospectus supplements before investing, the claims would still fail because the offering documents warned of the risks about which Republic claims ignorance.  Republic, that is, knew, or should have known, of matters disclosed in the offering documents and thus cannot maintain its claim on those grounds.  Finally, as to the 2003 certificates, the Blue Sky Law's statute of limitations bars Republic's claim.  K.R.S. § 292.480(5).

Republic's only novel argument against this conclusion is that "the language and intent of the statute is broad enough to include a purchaser's decision to hold securities based upon a false or misleading statement or omission in the offering documents."  Appellant's Br. at 56.  Such an argument, however, contravenes the clear language of the statute, which refers to statements made when one "offers or sells" a security.  K.R.S. § 292.480(1).  Kentucky courts, in construing statutes, attempt "to give effect to the intent of the General Assembly, and . . . derive that intent, if at all possible, from the plain meaning of the language the General Assembly chose."  *King Drugs, Inc. v. Commonwealth of Kentucky, Revenue Cabinet*, 250 S.W.3d 643, 645 (Ky. 2008).  To offer means: "To present or tender for acceptance or refusal," OXFORD ENGLISH DICTIONARY (Online Ed., Sept. 2011) (search "offer"), and to sell means: "To give up or hand over (something) to another person for money."  *Ibid.* (search "sell").  Both of these words relate to actions that take place before the transfer of property—they relate, in other words, to the decision to buy, not to the decision to sell or hold.  Republic's construction of the Blue Sky Law, therefore, fails.  *See Atkinson v. Morgan Asset Mgmt., Inc.*, 658 F.3d 549, 553–54 (6th Cir. 2011) (holding that plaintiffs did not qualify for statutory exemption requiring "purchase or sale of securities" when their "only [argument was] that Defendants deceived them into holding the shares too long").

VI

Republic cannot maintain any of its common-law fraud, negligent-misrepresentation, or Kentucky Blue Sky Law claims.  It fails adequately to plead actionable misrepresentations or omissions of fact, complains of risks disclosed in offering documents that it failed to read before investing tens of millions of dollars in risky securities, and attempts to maintain claims that are clearly time-barred.  We AFFIRM the district court's decision dismissing Republic's suit with prejudice.